[Civ. No. 5566.   Fourth Dist.   Nov. 18, 1957.]

DONALD S. KLING et al., Appellants, v. CITY COUNCIL OF THE CITY OF NEWPORT BEACH et al., Respondents.

A. K. Phelps for Appellants.

Karl Lynn Davis, City Attorney, and John C. Penney, Assistant City Attorney, for Respondents.

BARNARD, P. J.—This is an appeal from a judgment denying the appellants' application for a writ of mandate ordering the city council of Newport Beach to approve a proposed subdivision.

The appellants are the owners of Lot 140 in a tract known as "Shore Cliff" tract. There are 142 lots in this tract, of which 138 lots are subject to a tract restriction providing that

only one single family residence may be situated upon each lot. Four lots, including Lot 140 were specifically excepted from that restriction. These four lots form the northerly end of the tract, and face the state highway on one side. Lot 140 is somewhat triangular in shape and lies between the state highway on the north, a curved street on the south, another street on the west, and Lot 141 on the east. This lot contains about 25,000 square feet and is much wider in its western portion than at the easterly end. The appellants' home is located upon the westerly portion of this lot and they desire to sell the vacant easterly portion of the lot, thus dividing the lot into two separate parcels or building sites. The proposed subdivision would leave about 12,000 square feet in appellants' home site and put about 13,000 square feet in the new lot to be sold. The maps indicate that this new lot would have a street frontage of something over 300 feet and a depth at its westerly end of something over 100 feet. The great majority of the lots in this tract have a street frontage of from 40 to 70 feet. While some of the lots in this tract are larger than either of the proposed new lots, most of them are smaller in area.

The appellants' land is located in an ''R-1B'' area as set forth in a zoning ordinance adopted by this charter city in December, 1950. This ordinance requires, in an R-1B area, that there shall be no more than one single family dwelling on any one building site; that each building site shall have a minimum of 6,000 square feet, with a minimum width of 60 feet; and that certain requirements as to front, rear and side yards be complied with.

Article IX-½ of the Municipal Code of Newport Beach regulates the subdivision of lands within the city and prescribes rules and procedure for the obtaining of permits to subdivide such lands, and it was enacted as Ordinance 650 in October, 1951. This ordinance provides that the planning commission shall determine whether the tentative map conforms to the provisions of law and of this article, and ''upon that basis'' approve, conditionally approve or disapprove the same. It then provides that the planning commission shall report its action to the subdivider and to the city, and that the city council shall then consider said map and the plan of subdivision. It then provides, insofar as material here, ''If the City Council shall determine that said map is in conformity with the requirements of this Article and that it is satisfied with the plan of subdivision, it shall approve said

map. . . . If the City Council shall determine either that said map is not in conformity with the requirements of this Article or that it is not satisfied with the plan of subdivision, it shall disapprove said map specifying its reason or reasons therefor, and the City Clerk shall in writing advise the subdivider of such disapproval and of the reason or reasons for such disapproval. Within thirty (30) days after the City Council has disapproved any map the subdivider may file with the Planning Commission a map altered to meet the approval of the City Council.''

Pursuant to the provisions of this subdivision ordinance the appellants filed an application for a permit to subdivide their lot into two parcels. The planning commission heard and approved the application on February 16, 1956, with a written findings and report in which it stated that neither the recorded restrictions nor the municipal codes prohibited the resubdivision of this lot; that substantial property rights and values are apparent; that the commission did not interpret the intent of the municipal codes as interfering with such rights unless there is a conflict with the codes or with established policies relating to the general health, welfare and safety; and that the commission recommended that the application be granted upon certain named conditions as to the location of the building site and the size of the front, rear and side yards to be provided for. These conditions were consented to and agreed to by the appellants.

Pursuant to the ordinance provisions appellants' application for a permit was then referred to the city council for final action. A hearing before the council was had on February 27, 1956, and by a vote of six to one the application was denied. No finding was made that the proposed subdivision did not comply with all laws and ordinances, the council did not specify wherein it was not satisfied with the plan of subdivision, and no suggestion was made that any alteration was required. With reference to the action of the council the city clerk advised the appellants in writing that a discussion was had on the proposal to divide Lot 140 into two lots; that eight named persons spoke from the floor; that the city attorney expressed the opinion that the city council ''could either deny or grant this resubdivision and would probably be correct within the legal rights of the Council''; and that ''In view of the apparent desire of the majority of the people in Shorecliffs to disallow the resubdivision requested, and even though the Planning Commission recommended the granting

of this resubdivision, the resubdivision was denied." On a roll call vote six councilmen voted "Aye" and one "Noe."

The appellants filed a petition for a writ of mandate in the superior court based on the contention that the action of the council in denying them a permit was arbitrary, unreasonable and an abuse of discretion. An alternative writ was issued and the respondents answered and certified to the court a transcript of the records and proceedings before the city council. The petition for the writ alleged, the answer admitted, and the court found that the proposed subdivision conformed with the ordinances of the city of Newport Beach. The court also found that the appellants purchased Lot 140 knowing that said lot is one parcel of land; that about 73 residents in this tract had opposed the resubdivision of Lot 140 by written petitions, and that the board of directors of the Shore Cliff Association opposed any subdivision within said tract; that because of the shape of the lot and the contour of the land a large portion of the square footage of said lot is undesirable as a building site, "and therefore said proposed resubdivision of Lot No. 140 will not provide a building site in conformity with the Shore Cliff development"; that it is not true that the members of the city council acted arbitrarily or fraudulently in denying this application; and that the members of the city council "acted within their discretion in denying said application, basing their decision on the following reasons: "That Shore Cliff Tract, Tract No. 1116, is subdivided into 142 lots; that it is one of the most beautifully planned subdivisions within the boundaries of the city of Newport Beach; that many of the lots within the tract No. 1116 are of a large size; and that persons that purchased property within said tract go in there with that knowledge." Judgment was entered denying the petition for writ of mandate and this appeal followed. The appeal is presented on a clerk's transcript, which includes a transcript of the hearing before the city council, and upon the documents and maps which were admitted in evidence.

The appellants contend that an administrative board may not act arbitrarily in refusing such a permit as this; that the city council as an administrative board acted arbitrarily and unreasonably in refusing this permit; that an abuse of discretion by an administrative board is established if its order or decision is not supported by the findings; that the subdivision ordinance of this city does not grant to the city council an unlimited power or discretion to grant or deny

applications to subdivide lands; that the findings made in this case do not support the order or decision made by the city council; and that the trial court erred in finding that the property proposed to be subdivided did not contain approximately 25,650 square feet, in finding that the appellants would not be damaged if their application for a permit to subdivide is denied, and in finding that the city council denied this application for reasons different from those stated by the council through its clerk.

While the respondents admit that they did not have an "indefinite discretion" in this matter and that any discretion they have may not be exercised arbitrarily or whimsically, they contend that they had a "legal discretion to grant or deny a subdivision"; that under the terms of the subdivision ordinance the city council has the discretion to deny any subdivision if it is not satisfied with the plan of subdivision; that the members of the city council did not act arbitrarily or unreasonably, and no abuse of discretion appears, since the evidence supports the findings made by the city council and the trial court; and that the court did not err in making the other findings complained of by appellants. Briefly stated, it is respondents' position that the provisions of the subdivision ordinance, relating to whether or not the council is satisfied with the plan of subdivision, give the council the right to exercise its discretion in deciding whether or not any particular subdivision shall be permitted at all. In support of this position they cite *Wood* v. *City Planning Com.*, 130 Cal.App.2d 356 [279 P.2d 95], where the court held that the underlying purpose of the ordinances there in question was to repose in the planning commission and the city council a discretion to determine first whether or not an oil drilling district should be established in a given area at all and second, if so, under what conditions and restrictions such drilling should be permitted.

It is the usual rule, and it is here conceded, that the power of the trial court on reviewing an order of a local quasi-judicial body is confined to determining whether there was substantial evidence before the board to support its decision. Section 1094.5 of the Code of Civil Procedure provides in part:

"The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of dis-

cretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.''

The situation here is factually very different from that being considered in *Wood* v. *City Planning Com.*, where the ordinances authorized the city authorities to determine whether or not an oil drilling district should be permitted in a given area. ■ In the subdivision ordinance here in question the city council is not authorized to determine whether or not any subdivision shall be permitted. It is authorized only to pass upon the map submitted, and it may disapprove that map only if it does not conform to the requirements of the subdivision ordinance or if the council is not satisfied with the plan of subdivision. If the council disapproves the map the ordinance further provides that the subdivider must then be advised of the reason for such disapproval, and that the subdivider may then file an altered map to meet the objections made by the council. These provisions and the provisions for the proceedings before the planning commission clearly indicate that there was no intent to authorize the council to deny any subdivision at all on grounds not connected with the map or plan of subdivision. If the proposed subdivision does not comply with the zoning ordinance or with other applicable laws this would constitute a valid reason for disapproving the proposed map and suggesting changes that should be made. On the other hand, when all laws are complied with and there is nothing wrong with the plan of subdivision itself, the subdivision ordinance does not authorize the city council to deny the permit because of the ''apparent desire'' of certain people. That desire, even if more accurately ascertained, could not be controlling under the circumstances which here appear. (*Roussey* v. *City of Burlingame*, 100 Cal.App.2d 321 [223 P.2d 517]; *Gaylord* v. *City of Pasadena*, 175 Cal. 433 [166 P. 348].)

No evidence was received at the hearing before the city council other than certain maps and documentary evidence showing the proceedings before the planning commission. There was an argument and discussion between members of the council and other persons present, with no definite statement of any material fact. One of the councilmen expressed the opinion that the planning commission had no choice in recommending as they did, and stated that ''I am kind of fishing around for a good legal reason to deny it, but so far

I haven't found it." Although the record discloses no such reason, he later voted to deny the subdivision request. There was no evidence before the trial court except the transcript of the proceeding before the council and the same documentary evidence. The city council based its decision on the sole ground that it was "the apparent desire of the majority of the people in Shorecliffs to disallow the resubdivision requested." The trial court found that the council based its decision on the different reasons that this was a beautifully planned subdivision, that many of the lots therein are of a large size, and that persons purchasing property in that tract go there with that knowledge. While it may well be held that neither the findings of the city council nor those of the trial court are sustained by the evidence in the record, the controlling consideration here is that the findings which were made do not support the judgment. On the record before us the appellants were entitled to the issuance of the writ.

The judgment is reversed, with directions that a writ of mandate be issued ordering the respondent council to approve this proposed subdivision.

Griffin, J., and Mussell, J., concurred.