[Civ. No. 36485. Second Dist., Div. Five. Jan. 28, 1971.]

EDWIN L. HARBACH et al., Plaintiffs and Respondents, v.
EL PUEBLO DE LOS ANGELES STATE
HISTORICAL MONUMENT COMMISSION et al.,
Defendants and Appellants.

## COUNSEL

John D. Maharg, County Counsel, Joel R. Bennett, Assistant County Counsel, Roger Arnebergh, City Attorney, and Brian Crahan, Deputy City Attorney, for Defendants and Appellants.

Lawler, Felix & Hall, Richard L. Fruin, Jr., for Plaintiffs and Respondents.

David A. Workman, in pro. per., on behalf of Plaintiffs and Respondents.

## OPINION

**STEPHENS, Acting P. J.**—This is an appeal by the El Pueblo de Los Angeles State Historical Monument Commission (hereinafter, the Commission) from a judgment of the Superior Court of Los Angeles County granting a writ of mandate. The writ was sought by respondents to order the Commission: (1) to do all the necessary and appropriate acts to relocate and restore a building known as the Rochester House within the El Pueblo de Los Angeles Historical Monument (hereinafter, the Historical Monument); and (2) to comply with all the obligations imposed by (a) certain resolutions[1] adopted by the Commission; and (b) a contract entered into between the Commission and the United States government.

---

[1]The main provisions of the two key resolutions (Nos. 176 and 175) approved by the Commission read as follows:

*Resolution No. 176:*

"WHEREAS, the owner of the building located at 1012 West Temple Street and known variously as the West Temple Apartments and the Rochester is desirous of having it removed from its present site and to that end is prepared to give the building away, and

"WHEREAS, it is the consensus of this Commission that such building possesses architectural, cultural and historical significance in the interpretation of the growth and evolution of Los Angeles, and that its addition to the Pueblo de Los Angeles State Historical Monument would therefore be in conformity with and further the general purpose of the Monument;

"WHEREAS, Section XVI of the Master Plan of the Pueblo de Los Angeles State Historical Monument provides that the development of the portions of the Monument not specifically provided for in such Master Plan shall be in conformity with the general purpose of the Monument, as set forth in such Master Plan.

"Now THEREFORE, IT IS RESOLVED that this Commission, subject to the approval of the State of California, set aside and make available within the Pueblo de Los

The respondents' brief was submitted on behalf of petitioners (representing the class of persons who sought the writ of mandate) and three members of the Commission (John Anson Ford, Dorothy A. Burnaby, and David A. Workman), who consented to the judgment and who disassociated themselves from this appeal, which is being prosecuted in the name of the Commission and its remaining members.

The Commission is a public entity created by the State of California, the County of Los Angeles, and the City of Los Angeles in a Joint Powers Agreement dated December 1, 1965. The Commission is charged with the duty to manage, operate, and control the Historical Monument for the purpose of establishing a living memorial to the history and tradition of California life and environment as part of the state park system.

A chronology of the Commission's activities follows: (1) On August 9, 1967, by unanimous vote (with one abstention), adopted Resolution No. 176,[2] which resolved to move the Rochester House to a site within the Historical Monument, and that the addition of the Rochester House would be in accordance with the general purpose of the Historical Monument, and therefore in conformity with the Master Plan. The resolution was conditioned on the State of California's approval of the project and on sufficient

---

Angeles State Historical Monument a site for such building at the southwest corner of Main and Republic Streets, provided however, that sufficient monies can be raised from private sources to pay all costs of moving such building into the Monument area, constructing and placing it on a new foundation, and restoring it as nearly as possible to its original condition, and

"RESOLVED, that this Commission sponsor a campaign in the area of greater Los Angeles to raise monies to move such building into the State Historical Monument, to construct and place it on a new foundation and to restore it as nearly as possible to its original condition . . . ."

*Resolution No. 175:*

"RESOLVED, that this Commission, an executive commission of the State of California, hereby creates and establishes a fund, which shall have as its purpose the acquisition by the State of California, for use in the Pueblo de Los Angeles State Historical Monument, of properties (including buildings, furniture, furnishings, artifacts and objects of every kind and description) having historical, architectural, educational, or general cultural significance in depicting the story of the founding, growth and evolution of Los Angeles; the restoration of such properties to their historic condition; and their maintenance in uses compatible with the purposes of the State Historical Monument, whether residential, commercial, religious, civic, monumental, educational or otherwise, and

"RESOLVED, that such fund be called the Historic Los Angeles Fund, and

"RESOLVED, that such fund carry such address and be located at such bank or banks as the President of this Commission shall from time to time direct, and

"RESOLVED, that such fund may receive contributions from the general public, and

"RESOLVED, that Joel R. Bennett, Assistant County Counsel of Los Angeles County, be and he hereby is authorized and directed, in his capacity as legal counsel to this Commission, to request the District Director of Internal Revenue to render an opinion that contributions to such fund are deductible for income tax purposes."

[2]See footnote 1.

monies being raised from private sources. (2) On August 9, 1967, passed Resolution No. 175,[3] establishing the Historic Los Angeles Fund as the repository for monies received pursuant to public solicitation. (3) Initiated and sponsored a public solicitation, which raised the monies deposited in the Historic Los Angeles Fund. (4) Obtained in the Commission's name permits issued by the Social Service Department of the City of Los Angeles to conduct the public solicitation. (5) Obtained tax deductibility status from the Internal Revenue Service for contributions to the Historic Los Angeles Fund. (6) Designated the depository and the Commission members as the signatories for the bank account holding the Historic Los Angeles Fund. (7) Employed on a nonsalaried basis a person to conduct the public solicitation. (8) Reported to the Social Service Department of the City of Los Angeles on contributions to the fund. (9) Audited the fund. (10) Authorized expenditures of approximately $3,800 from the fund. (11) Sought and obtained written approval of the state Department of Parks and Recreation for the relocation and restoration of the Rochester House. (12) Applied to the Department of Housing and Urban Development (HUD) for a federal grant for monies to be used for the relocation and restoration of the Rochester House. (13) On October 16, 1968, duly approved and entered into a contract with HUD to obtain a federal grant of a maximum of $100,000 on a matching fund basis for the relocation and restoration of the Rochester House. (14) On August 13, 1969, refused to take further steps to complete the implementation of the original Resolution No. 176.

During the period of the recited series of events, respondents had contributed a sum of $31,300, and had committed by a letter of credit the sum of $75,000 to the fund. As a result of these events, respondents brought this class action to compel the Commission to fulfill its obligation.

The Commission states that no writ of mandate may issue to compel it to perform a discretionary act, or to perform any act which it has no legal duty to perform. (*Meyer* v. *City & County of San Francisco,* 150 Cal. 131, 134 [88 P. 722]; *Houlihan* v. *Department of Motor Vehicles,* 3 Cal. App.3d 915, 919 [83 Cal.Rptr. 885]; *Forest Lawn Co.* v. *City Council,* 244 Cal.App.2d 343, 346 [53 Cal.Rptr. 452]; *Farrington* v. *Fairfield,* 194 Cal. App.2d 237, 239 [16 Cal.Rptr. 119].) We do not quarrel with this position. The real issue is whether the Commission's acts in implementing the resolution are discretionary or ministerial, and whether there exists a legal duty which the Commission must perform.

To determine whether acts of the Commission are ministerial or discretionary, we must look to the Joint Powers Agreement. The agreement provides in section 3.6: "The presence of six members . . . shall be required to constitute a quorum, and a two-thirds vote of all members and

[3]See footnote 1.

alternates entitled to vote present shall be necessary for the transaction of business. . . ." This is the specific and only method provided for the Commission to exercise its discretion or to transact business. Once the required vote is achieved, it is documented by a resolution. The Commission is then charged with the administrative function of implementing the resolution.

A close analogy with the function of the city council can be drawn. When the city council votes for an ordinance, the councilmen are exercising their discretion in voting. If the necessary majority vote in favor of the ordinance, the various city departments are charged with the ministerial task of implementing the ordinance. Since the Commission does not have other departments to implement the resolution, it is the legal duty of the Commission through its executive officers to implement all duly passed resolutions. The Commission's function is now purely ministerial. Mandate will issue to compel a public body to perform a ministerial act. (Code Civ. Proc., § 1085; see, *San Bernardino Fire & Police Protective League* v. *City of San Bernardino*, 199 Cal.App.2d 401, 417 [18 Cal.Rptr. 757].)

As stated, Resolution No. 176 was passed unanimously by the Commission, with one abstention; it has never been rescinded or modified, and remains in full force and effect. The individual members of the Commission have thereby exercised their discretion in deciding to relocate the Rochester House, and now it is the ministerial task of the Commission to implement the resolution. The Commission's duty remains until the resolution is effectively implemented, or the members of the Commission again exercise their discretion by the necessary two-thirds vote of those present to rescind or modify the resolution. ▊ However, under the existing facts, the Commission would be barred from a discretionary act now to rescind or modify the resolution. Because of intervening events and the substantial reliance (evidenced by donations) by approximately 1,500 people on the Commission's prior course of conduct, it would be unconscionable to permit the Commission to now rescind the resolution. The Commission has a duty to perform all the necessary acts within its power to incorporate the Rochester House in the Historical Monument pursuant to Resolution No. 176 because the class of persons represented by the respondents has foreseeably and detrimentally relied on the Commission's adoption of the resolution and on the course of conduct supporting its purpose and plan. (*Housing Authority* v. *City of Los Angeles*, 38 Cal.2d 853, 869-870 [243 P.2d 515], cert. den. 344 U.S. 836 [97 L.Ed. 651, 73 S.Ct. 46]; *Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309, 331-334 [44 P.2d 547]). The *Housing Authority* case held that the City of Los Angeles was estopped to rescind an ordinance on which numerous parties had relied. In that case, the city council in 1949, by ordinance, had approved plans for a low rent housing project, and had approved the city's execution of a cooperation agreement with the housing

authority. Relying on the ordinance, the housing authority commenced preliminary work necessary for the construction of the housing project. In 1951, by majority vote, the city council rescinded the ordinance and abrogated the agreement. The state Supreme Court held that the City of Los Angeles had a duty to implement the rescinded ordinance for two reasons: (a) the city had entered into the cooperation agreement without power to withdraw under the relevant statutes; and (b) the substantial reliance placed on the adoption of the ordinance precluded its rescission and the abrogation of the cooperation agreement executed pursuant to the ordinance. The *Housing Authority* case is controlling in the instant case, and the Commission is estopped from rescinding Resolution. No. 176.

The Commission contends that there were no facts in evidence to show the necessary promissory estoppel. An examination of the record shows overwhelming documentary evidence to support respondents' allegations. Contributions to the Historic Los Angeles Fund were made by respondents for only one purpose: the relocation and restoration of the Rochester House. Given the specificity of Resolution No. 175 for the establishment of the Historic Los Angeles Fund, its contributors are justified in relying upon the Commission's promise that the funds will be used for the resolution's expressed purpose. Respondents did not contribute to a general fund, but to a very specific fund, for a very specific purpose. The overwhelming weight of the evidence contained in the record considered by the trial court clearly negates the Commission's contention.

■    The Commission also contends that the trial court erred in not hearing evidence on issues of fact. This contention overlooks the provisions of Code of Civil Procedure section 1094 which provides in pertinent part: "If the answer raises only questions of law, or puts in issue immaterial statements, not affecting the substantial rights of the parties, the court must proceed to hear or fix a day for hearing the argument of the case." (See *Lotus Car Ltd.* v. *Municipal Court,* 263 Cal.App.2d 264, 267 [69 Cal.Rptr. 384]; *Lassen* v. *City of Alameda,* 150 Cal.App.2d 44, 47 [309 P.2d 520].) All the "facts" raised by the Commission do not go to the issue raised by respondents' petition for a writ of mandate, but, to this court, seem to go to the alleged inability of the Commission to carry out the orders of the writ of mandate.    ■    The Commission claims that the writ of mandate should not have been issued because it does not have approval of the state; the master plan must be amended; the state Director of Finance must approve acceptance of a gift (Gov. Code, § 11005) and is therefore a necessary party to the action; the Historic Los Angeles Fund is not under its control; and the issue is moot due to lapse of time. The Commission's claims conveniently ignore the fact that these points are refuted by the record or can be eliminated by some action of its own.

■ State approval of the project has already been received, conditioned upon receipt of private funds sufficient to cover the cost of relocation and restoration of the Rochester House. These funds exist in the Historic Los Angeles Fund (which is under the sole control of the Commission, as proved by Resolution No. 175) and the matching grant from HUD.

■ The trial court found that amendment of the master plan was not necessary for implementation of the resolutions. We agree with this finding; furthermore, if indeed the master plan must be amended, it is within the power of the Commission to initiate the amendment. Section 6.3 of the Joint Powers Agreement provides: "Any amendments suggested by the Commission, or by STATE, COUNTY, or CITY shall be transmitted to the Commission which shall immediately process such request for amendment."

■ The writ of mandate issued by the court does not command the state Director of Finance to approve the gift. It commands the Commission to take the necessary steps to further implement Resolution No. 176. Before the Director of Finance can approve the gift, the Commission must present it for his approval. Until that time, there is nothing for him to approve.

■ The Commission's final contention of mootness due to lapse of time is derived from the letter of approval received from the state Department of Parks, which states: ". . . Rochester House will be accepted as a gift to the State Park System . . . upon the condition that sufficient funds are raised by way of private contributions, subscriptions and pledges (not to exceed two years in time of payment). . . ." It is indeed strange that the Commission places this strained construction on this time limit. The limitation is clearly applicable to the duration of the pledges, and not to when the project must be completed. Additionally, if there were a time limit, there is no indication by the state that an extension of time would not be granted. It is not an unusual circumstance for government projects to take longer than planned, and their cancellation for this factor alone would be unusual.

■ The Commission also argues that respondents do not have standing to sue because they do not have a property interest in the Rochester House. The Commission is mistaken in its stated basis for respondents' action. Respondents seek to enforce a clear legal right based on their personal economic interest through their donations to the Historic Los Angeles Fund.[4]

---

[4]Respondents have also urged that the contract between HUD and the Commission which provides that the federal government will donate $100,000 on a matching fund basis to relocate the Rochester House is a third-party beneficiary contract for the benefit of the public generally; that the respondents are therefore donee beneficiaries

Mandamus is an extraordinary legal remedy, but it is in the nature of an equitable interference to remedy certain deficiencies in the common law. It will ordinarily be issued where a legal duty is established and no other adequate means exist for enforcing that duty. (*Dowell* v. *Superior Court,* 47 Cal.2d 483, 486 [304 P.2d 1009].)

We conclude that the trial court did not err in its judgment. The Commission has a legal duty to perform, and it is ministerial in nature. If after diligent efforts to comply with the writ of mandate the Commission finds it is unable to comply, it would then be appropriate for the Commission to return to court for the necessary relief.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

On February 22, 1971, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 26, 1971.

---

and may enforce the contract. Although the position seems meritorious (see *Shell* v. *Schmidt,* 126 Cal.App.2d 279, 289-291 [272 P.2d 82]), we do not deem it necessary to decide that question in this case.