[Civ. No. 39599. Second Dist., Div. Five. Mar. 29, 1973.]

GREAT WESTERN SAVINGS AND LOAN ASSOCIATION,
Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

404

COUNSEL

Roger Arnebergh, City Attorney, John Daly, Claude E. Hilker, Assistant City Attorneys, and George G. Buchanan, Deputy City Attorney, for Defendants and Appellants.

Edythe Jacobs as Amicus Curiae on behalf of Defendants and Appellants.

E. Arnold Oppenheim for Plaintiff and Respondent.

OPINION

ASHBY, J.—The City of Los Angeles, the city council, and Rex E. Layton, the city clerk, appeal from a judgment for respondent, hereinafter referred to as developer, granting a peremptory writ of mandate ordering the acceptance, approval and recordation of the final map of Tract 30561.

On September 26, 1969, the City Council of the City of Los Angeles adopted the action of the city planning commission and approved tentative tract map 30561. The city council found that based on the documents, testimony, files, and record before it, objections to the approval of Tract 30561 on the basis of tract incompatibility, inadequate access, improper drainage, and hazardous geologic conditions could not be sustained. However, the city council did impose an additional condition that required respondent (developer) to stabilize a steep nonconforming cut slope along the northwesterly boundary of lot 36 of the tract in a manner satisfactory to the department of building and safety.[1]

On June 25, 1970, the building and safety department approved developer's grading plans and issued a grading permit. On July 1, 1970, the building and safety department notified the bureau of engineering that Tract 30561 had been cleared for recordation.

On March 15, 1971, developer filed the final map for Tract 30561 and

---

[1] "A steep nonconforming cut slope along the northwesterly boundary of Lot 43 shall be stabilized in a manner satisfactory to the Department of Building and Safety. The subdivider's engineer and geologist shall submit for the approval of the Department the proposed method of stabilization and a detailed plan therefor, which proposed method may include one of the following: [¶] a. Trim the overhanging portion of the subject cut slope back to an angle of 1:1; [¶] b. Construct a designed retaining wall to support the slope; [¶] c. A combination of the above two methods." Lot 43 was later renumbered lot 36.

requested its acceptance and approval for recordation. That same day city engineer, Lyle A. Pardee, transmitted the tract map to the city council, together with the certificate of compliance and the required surety bonds for the attached riders. Mr. Pardee stated that all applicable conditions of the tentative map had been satisfied and he recommended to the council that the final map of Tract 30561 and the accompanying bond with riders be approved.[2]

On March 24, 1971, the city council adopted a motion disapproving[3] the final map of Tract 30561 and set forth the following reasons for disapproval:

"1. The developer has failed to comply with the condition imposed by the City Council in its motion modifying and approving the tentative map on September 26, 1969, in that the developer has failed to rectify the hazardous slopes and conditions on the lots immediately adjoining the northwesterly side of original Lot 43 [36].

"2. The developer withheld vital information from the Council at the time consideration was given to the approval of the tentative map.

"3. Potential hazards are created by this tract.

"4. The offsite roadway widening improvements will have too drastic affect [sic] upon adjoining property owners.

"5. The developer failed to diligently pursue his work as promised.

"6. The temporary debris basin constructed in the course of development of this tract has proven inadequate and unsafe and will not adequately perform."[4]

On May 5, 1971, developer filed a petition for writ of mandate in the superior court contending that the city council possesses no discretionary right permitting that body to disapprove the final map of tract number 30561. A trial was held during which the court took testimony from various city officials, including City Councilman Potter who made the

---

[2]Although the actual grading had not yet been accomplished, the grading plan for satisfying the condition imposed by the city council had been approved by the grading division of the department of building and safety.

[3]When this matter came before the city council, Deputy City Attorney Claude Hilker advised the council that they had a mandatory duty to approve and record the tract map.

[4]The original motion stated rather general reasons and the matter was continued to March 24, 1971, for the purpose of clarifying the proposed motion to disapprove.

motion to disapprove the final map.[5] The court held that the developer had not failed to comply with any condition imposed by the city council[6] and therefore the developer was entitled under the law to have the final map approved and accepted for recordation.[7] The court ordered the city council to approve the final map and accept it for recordation and ordered the City Clerk of the City of Los Angeles to properly record the map.[8]

No factual matters have been raised by this appeal. The issues before us are strictly questions of law. Appellants state the basic question presented by this appeal as follows: "Do the courts of this state have the jurisdiction to mandate the Los Angeles City Council under the facts of this case to approve the subject final subdivision tract map or is the ultimate determination thereon a matter solely within the discretion of the governing body."

[5]Mrs. Edythe Jacobs, on behalf of herself and "sub-jacent property owners," was permitted to argue amicus curiae upon the conclusion of the trial.

[6]The trial court in finding of fact number VIII found that: "The developer has not failed to comply with any condition imposed by Respondent City Council of the City of Los Angeles with its approval of the Tentative Map of Tract 30561, Los Angeles. [¶] . . . . The evidence does not support reason No. 2, that the developer withheld vital information from the Council at the time consideration was given to the approval of the Tentative Map, or that the Council was unaware of any information necessary to a proper and adequate consideration of the approval of the Tentative Map. [¶] The other reasons given by said City Council for its disapproval of the Final Map of Tract 30561 are not supported by the evidence, are irrelevant and immaterial and are not included as conditions for approval of the Tentative Map."

[7]In conclusion of law number 3, the court stated: "The City Council in its action of March 24, 1971 disapproving said Final Map, failed to comply with the mandatory provisions contained in §§ 11611 and 11614 of the Business and Professions Code of the State of California, and of the provisions contained in § 17.07 of the Municipal Code of The City of Los Angeles. The duties and obligations of the members of the City Council under said sections of the law, required to be performed by them with reference to the approval and acceptance for recordation of the Final Map of Tract 30561, is administrative, ministerial and mandatory. The City Council was vested with no discretionary rights permitting said governmental body to disapprove said Final Map if the state and the local laws and the tentative tract map conditions were complied with. [¶] Other than (1) the failure to comply with the conditions imposed for approval of the Tentative Map, or (2) approval of the Tentative Map by reason of fraud, misrepresentation or withholding of vital information (neither of which is supported by the evidence), the reasons given by the City Council for its disapproval of the Final Map of Tract 30561 do not vest in the Council the authority to deny approval of the Final Map."

[8]The city attorney advised the city council that an appeal from the court's judgment had no merit and advised against taking an appeal. Nevertheless, after that advice was rejected, the city attorney, turning from his role as counselor to advocate, cogently presented arguments supporting appellants' actions.

Appellants' keystone contention is that the approval and acceptance for filing of the final tract map is within the sole discretion of the city council. All of appellants' other contentions are built on this premise.

· I

### THE NATURE OF THE CITY COUNCIL'S DUTY

Appellants contend that it is within the sole discretion of a local governing body to approve or disapprove a final subdivision tract map. In taking this position, appellants suggest that the city council could refuse to approve a final tract map even if the applicable state and local laws and the conditions of the tentative map were complied with. This contention is wholly without merit.

Business and Professions Code section 11611[9] provides in part: "The governing body *shall* at its next meeting or within a period of not more than 10 days after the filing *approve the map if it conforms to all the requirements of this chapter and of any local ordinance applicable at the time of approval of the tentative map, or any rulings made thereunder.* [¶] The time limit for the approval of such map may be extended by mutual consent of the subdivider and the governing body. *If no action is taken within such time limit,* or within the time to which it has been extended by such mutual consent, *the map, if it conforms to all the requirements above set forth, shall be deemed to be approved, and it shall be the duty of the clerk of the governing body thereupon to certify the approval.*" (Italics added.)

The applicable local ordinance is section 17.07 of the Los Angeles Municipal Code. Subdivision (B) of that section provides in part as follows:

"PROCEDURE. A Final Map shall be prepared and filed with the City Engineer in compliance with the provisions of this article. Final Maps shall conform substantially to the approved Tentative Maps. . . .

---

[9]The Subdivision Map Act sets forth the procedures and requirements to be followed for the subdivision of real property in California. The act requires every county and city in the State of California to adopt an ordinance regulating and controlling the design and improvement of subdivisions. When adopted, that ordinance must be "consistent with and not in conflict with" the Subdivision Map Act. (Bus. & Prof. Code, § 11506.) The City of Los Angeles has adopted a subdivision map ordinance by enacting Los Angeles Municipal Code sections 17.00 through 17.60.

"1. The Final Map *shall be accepted*[10] by the City Council provided:

"(a) The necessary improvements as set forth in the approval of the Tentative Map have been installed and approved by the City, or provided the subdivider submits satisfactory improvement plans together with the necessary guarantee that the improvements will be installed;

"(b) The required map checking fees have been paid by the subdivider;

"(c) All checking has been completed by the various departments and public agencies; and

"(d) Taxes, liens and special assessments have been paid, or such payment guaranteed.

"2. No Final Map shall be recorded until the required improvements have been installed or agreed to be installed." (Italics added.)

The court in *Ellis* v. *City Council,* 222 Cal.App.2d 490 [35 Cal.Rptr. 317], dealt with the performance of a mandatory duty. The court held that a building official had a mandatory duty to issue a building permit when the applicant had complied with all legal requirements upon which the issuance was conditioned. The court, at page 497, held: "Appellant next contends that the evidence conclusively established that the denial of appellant's application for a renewal or for a new building permit was both a ministerial and an intentional act and that the trial court's findings to the contrary are therefore erroneous. We agree. In *Palmer* v. *Fox* (1953) 118 Cal.App.2d 453 [258 P.2d 30], the plaintiffs, having fully complied with all legal requirements, applied to the deputy chief engineer of the City of Palos Verdes Estates for the issuance of a building permit. The deputy, although fully empowered to grant such a permit, refused to do so. In affirming the judgment granting plaintiffs a writ of mandate, the court held that the deputy had no right or duty to withhold the permit when plaintiffs had complied with the prerequisites for its issuance. 'When an official is required and authorized to do a prescribed act upon a prescribed contingency, his functions are ministerial only, and mandamus

---

[10]Amicus curiae argues in her brief that the word "shall" as used in the Subdivision Map Act is directory and not mandatory, citing several cases in support of this contention: *Estate of Mitchell,* 20 Cal.2d 48 [123 P.2d 503]; *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564 [203 P.2d 758]; and *Johnston* v. *County of Yolo,* 274 Cal.App.2d 46 [79 Cal.Rptr. 33]. These cases are not persuasive. Also, section 11.01 of the Los Angeles Municipal Code is directly contrary to that contention. Section 11.01 provides that the word "shall" as used in the ordinance is mandatory.

may be issued to control his action upon the happening of the contingency.' (P. 458.) (To the same effect, see *Munns* v. *Stenman* (1957) 152 Cal. App.2d 543, 557 [314 P.2d 67].)"

It is clear that the governing body's function is administrative, ministerial and mandatory where the final tract map complies with the state and local laws and has complied with the conditions to the tentative tract map. The fact that approval is automatic if the governing body takes no action within the 10-day period is significant in that the automatic approval provided for in Business and Professions Code section 11611 is effective only if the final tract map "conforms to all the requirements above set forth, . . ." The mere fact that the governing body takes no action within the prescribed time is not sufficient. The final map must be in conformance but if it is, it is approved even without action by the governing body to either approve the final map or determine its conformance to laws and conditions.

As a part of appellants' primary contention that the acceptance and approval of a final tract map is within the sole discretion of the city council, appellants argue that the council has the sole and exclusive power to determine whether or not the final tract map conforms to the requirements of the state Subdivision Map Act and the local subdivision ordinance and, further, whether the conditions to the tentative tract map have been satisfied.

Developer takes the position that under both state and local law the authority to determine compliance for the purpose of accepting or approving a final tract map has been delegated to the city engineer and his determination is binding on the city council.

The only specific provision relating to a governing body's discretion in regard to tract maps is found in Business and Professions Code section 11552 relating to tentative tract maps which provides that when a matter is appealed the governing body "may sustain, modify, reject or overrule any recommendations or rulings of the appeal board and may make such findings as are not inconsistent with the provisions of this chapter or local ordinance adopted pursuant to this chapter." Section 17.06 of the Los Angeles City Ordinance provides for tentative tract map appeals to the city council.

It should be noted that although a hearing before the governing body is provided for, it is required only when requested by the developer or other interested party. If everyone is satisfied with the requirements imposed by the technical staff or the advisory board and appeal board then the city

council does not become involved even at the tentative map stage. Therefore, the discretion conferred upon the governing body under state and local law is exercised by the action it takes when there is an appeal. In the instant case the city council exercised its discretion by imposing the subject condition to the approval of the tentative map of Tract 30561.

A primary purpose of the tentative map with conditions is to set forth clearly the requirements to which a developer must conform in developing his property. The developer is required to demonstrate in his final tract map his resolution of all the development problems enumerated in the tentative map. He has 18 months in which to prepare and file the final map. (Bus. & Prof. Code, § 11554.) Preparation of the final map entails the expenditure of substantial funds, time and effort. For that reason, after the developer has relied on the approved tentative map with conditions and has produced a final tract map which satisfies these conditions, he is entitled to acceptance and approval of that final map without the imposition of new or altered conditions and without undue delay in the absence of his consent.

The fact that the final map is submitted to the governing body for acceptance or approval does not mean that the governing body has the authority to make a redetermination of matters that are primarily technical in nature.[11] Submission of the final map to the governing body, however, serves a useful purpose in that it insures that the governing body and the public have an opportunity to remain informed as to development within the geographical limits of the public entity.

Section 11529 of the Business and Professions Code provides as follows: "The county surveyor or city engineer shall make such detailed examination of tentative and final maps and such field check, if any, as may be necessary *to enable him to ascertain compliance with this chapter* and to make on final maps the certificate required by Section 11593."[12] (Italics added.)

---

[11]Professional standards for city engineers and county surveyors have been set to insure that the determination of compliance as required under the Subdivision Map Act and the local ordinance is within the competence of the appropriate official. For example, see Business and Professions Code sections 6751 et seq., 11651, and Government Code section 27550.

[12]Section 11593 of the Business and Professions Code provides in pertinent part as follows:

"(a) If a subdivision lies within an unincorporated area, a certificate by the county surveyor and, if a subdivision lies within a city, *a certificate by the city engineer is required.* The appropriate official shall state that:

"(1) He has examined the map.

The Los Angeles Municipal Code contains similar provisions indicating that the authority and obligation to determine compliance with state and local law and conditions imposed in the tentative map have been delegated to the city engineer.[13]

Significantly, there is no provision in either the Subdivision Map Act or the Los Angeles Municipal Code for a hearing by the governing body to determine compliance with conditions or approval of a final tract map. It is apparent that this legislation was not enacted with the expectation that a lay governing body would be required to make the determinations necessary to a finding of compliance or noncompliance with technical require-

---

"(2) The subdivision as shown is substantially the same as it appeared on the tentative map, and any approved alterations thereof.

"(3) All provisions of this chapter and of any local ordinance applicable at the time of approval of the tentative map have been complied with.

"(4) He is satisfied that the map is technically correct.

"(b) . . . The county surveyor or the city engineer, or other public official or employee authorized to perform each function, shall complete and file with his governing body his certificate as required by this section within 20 days from the time said final map is submitted to him by the subdivider for approval." (Italics added.)

[13]Subsection (M) of section 17.07 of the Municipal Code provides in part:

"In addition to the certificates required by the Subdivision Map Act, *the City Engineer shall certify that the subdivision substantially conforms to the approved Tentative Map, and the required public improvements have been installed or agreed to be installed.*" (Italics added.)

Subsection (C) of section 17.07 provides that the general form and layout of the map, including size and type of lettering, drafting and location of acknowledgments, *shall be as determined by the City Engineer.*

Subsection (G) of section 17.07 provides that the Final Map shall indicate the basis of bearings, making reference to some recorded subdivision map, or other record *acceptable to the City Engineer.* Also, as is *deemed feasible by the City Engineer,* the Final Map shall have as the basis of bearings a line based on the Geodetic Triangulation System.

Subsection (B) of section 17.08 provides in part as follows: *"All street improvements, including any drainage structures incidental thereto, shall be installed to the grade approved by the City Engineer. Plans, profiles, and specifications for such improvements shall be furnished to the City Engineer for processing concurrently with the checking of the Final Map."* (Italics added.)

Subsection (G) of section 17.08 provides as follows: ". . . When the owner has not completed the required improvements, the guarantee therefor shall be in either one of the following forms:

"(a) A bond filed with the City Engineer and *in such an amount as the City Engineer shall estimate and determine to be reasonably necessary* to complete all of the improvements required to be done by the owner." (Italics added.)

Subsection 5 provides for the beginning of the terms of the bond and goes on to provide: ". . . and shall end upon the date of the completion *to the satisfaction of the City Engineer* of all the improvements required to be done by the owner. *The fact of such completion shall be evidenced by a statement thereof signed by the City Engineer."* (Italics added.)

ments and conditions. Consequently, there is no provision for a hearing in which such a technical determination would be made by the governing body.

It is clear that the duty to determine the compliance of a final tract map with applicable state and local law and to imposed technical conditions has been delegated to the city engineer. If the city council disagrees with that determination, the council meeting is not the proper forum in which to litigate the question.

We do not say that there is no instance in which the city council may act other than to accept or approve a final tract map, as for example where there is fraud or misrepresentation, but the record before this court contains no evidence to justify such a contrary action.

## II

### THE COURT'S POWER OF REVIEW

Appellants' last contention of error is that the trial court had no jurisdiction to review or interfere with the action of the city council in disapproving respondent's final tract map.[14] In support of this contention, appellants cite numerous cases which state the rule that the courts have no jurisdiction over the legislative or discretionary acts of a municipal governing body. The function of the city council in the case before us was administrative and ministerial; therefore, none of appellants' cases are applicable in the instant case.

■ Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion. *Elder* v. *Anderson,* 205 Cal.App.2d 326 [23 Cal.Rptr. 48]; *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848].

In *Drummey, supra,* the court at page 83 stated: ". . . where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial, and upon the happening of the contingency the writ may be issued to control his action. [Citations.]"

---

[14]Amicus curiae raises additional issues on appeal which were not raised in the trial court and were not included by appellants as issues in this appeal. For these reasons we do not consider them. (*Eggert* v. *Pacific States S. & L. Co.,* 57 Cal.App. 2d 239, 250 [136 P.2d 822]; *Pratt* v. *Coast Trucking, Inc.,* 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332].)

Code of Civil Procedure section 1085 in pertinent part provides, "[The writ of mandate] may be issued by any court, except a municipal or justice court, . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, . . ."

In *Kling* v. *City Council,* 155 Cal.App.2d 309 [317 P.2d 708], the court reviewed the city council's disapproval of a tentative tract map. In issuing a writ of mandate ordering that the *tentative map* be approved, the court held that the city council had a duty to approve the *tentative map* when it conformed to all the requirements of the subdivision ordinance. Even though the city council had discretion to disapprove the tentative map if it was not satisfied with the plan of subdivision, in the absence of a showing of dissatisfaction, the map's conformance to all requirements imposed a mandatory duty on the city council to approve it.

Since the city council's duty relative to the final tract map was administrative and ministerial, under the provisions of Code of Civil Procedure section 1085, the issuance of a writ of mandate is the proper procedure to compel the city council to perform its ministerial act. (*Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159, 170-171 [28 Cal.Rptr. 724, 379 P.2d 28]; *Kling* v. *City Council, supra,* 155 Cal.App.2d 309; *May* v. *Board of Directors,* 34 Cal.2d 125, 133-134 [208 P.2d 661]; *Consolidated Printing & Pub. Co.* v. *Allen,* 18 Cal.2d 63, 66 [112 P.2d 884]; *Harbach* v. *El Pueblo de Los Angeles etc. Com.,* 14 Cal.App.3d 828 [92 Cal.Rptr. 757].)

Where, as here, the action required of the city council is administrative and ministerial, the superior court has authority under Code of Civil Procedure section 1085 to compel the performance of that action.

After a full hearing, during which numerous witnesses were heard and argument presented by both the city attorney and the amicus curiae, the trial court issued its writ and made findings of fact that the conditions imposed in the tentative map had been complied with and that there was no support whatever for a contention that potential hazards had been created by the tract.

For the reasons already stated, we hold that the acceptance by the city council and the recording by the city clerk of a final tract map which complies with the applicable state and local law and the tentative map

with conditions are administrative and ministerial actions, the performance of which may properly be mandated by the superior court.

Judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

On April 16, 1973, the opinion was modified to read as printed above.