[Civ. No. 22373. Fourth Dist., Div. One. Nov. 26, 1980.]

HORST KRIEBEL et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF SAN DIEGO,
Defendant and Respondent;
T. H. NIELSEN CORPORATION, Real Party in Interest and
Respondent.

COUNSEL

Janet Motley for Plaintiffs and Appellants.

John W. Witt, City Attorney, and James J. Thomson, Deputy City Attorney, for Defendant and Respondent.

McDonald, Hecht & Worley, Donald R. Worley and Paul E. Robinson for Real Party in Interest and Respondent.

OPINION

BUTLER, J.*—Petitioners are owners and residents of property contiguous to the site of a project contemplating the construction of a 46-unit

*Assigned by the Chairperson of the Judicial Council.

subdivision on undeveloped mesa top and canyon land in La Jolla. The project was proposed by real party in interest-respondent T. H. Nielsen Corporation (Nielsen) and was approved by the respondent City of San Diego City Council (Council).

Petitioners contend the trial court committed two errors which require reversal of the judgment. They claim the court ruled (1) the action was barred for failure to have served summons on the complaint within the statutory period under the Subdivision Map Act, and (2) the petitioners were estopped from raising objections to an environmental impact report. Three days before oral argument, Nielsen moved to dismiss for mootness.

FACTS

Nielsen applied to the city for approval of a planned residential development (PRD) permit and tentative subdivision map for the project. An environmental impact report (EIR) was prepared, submitted, processed and became final. The PRD was approved by the planning commission whose action was appealed to the Council. The PRD was approved by the Council and on the same day appropriate resolutions were adopted by the Council making necessary findings as to the EIR. Thereafter, a tentative subdivision map for the project was approved by the subdivision review board (SRB) whose decision was appealed to and affirmed by the planning commission. That approval in turn was appealed to the Council. On March 6, 1979, the Council heard the appeal, denied it and upheld the SRB decision and approved the tentative subdivision map and on May 14, 1979, filed its notice of determination concerning the map approval.

On June 12, 1979, petitioners filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5, seeking to set aside the city's approval of the project. No summons, alternative writ, or other form of process was ever issued or served on the city or Nielsen. The petition was served on each of them. The record before us does not include any notices of hearings on the petition nor dates of service of the petition on the parties. On August 2, the petitioners and Nielsen and the city, through their counsel, stipulated that a hearing set for August 16, 1979, could be continued to the first week of September 1979. The trial court ordered the hearing be continued to September 6, 1979.

On September 4, the city and Nielsen each answered the petition, denied material allegations and raised affirmative defenses of the statute of limitations, failure to produce the administrative records of proceedings before the various agencies, estoppel and failure to challenge the EIR. In the course of a hearing held on September 14, the court orally denied the writ as to the first cause of action for failure to have served summons on the petition within the required time, and held as to the third and fourth causes of action the petitioners were estopped from raising defects in the EIR when they failed to challenge the EIR in administrative hearings. No findings were requested or made and judgment denying the writ was entered November 11, 1979. The appeal relates only to the first, third and fourth causes of action.

## Mootness

As noted above, Nielsen moved to dismiss for mootness. Declarations in support of the motion demonstrate substantial grading and other work has been completed on the site. We deny the motion and consider the question of mootness on the merits (*Gogerty* v. *Coachella Valley Junior College Dist.* (1962) 57 Cal.2d 727 [21 Cal.Rptr. 806, 371 P.2d 582]; *Smith* v. *North* (1966) 244 Cal.App.2d 245 [53 Cal.Rptr. 94].)

## The Subdivision Map Act
## Statute of Limitations

The first cause of action alleges the city failed to follow the requirements of the Subdivision Map Act (Gov. Code, § 66473 et seq.) and abused its discretion in approving the tentative map.

■ Respondents contend the failure of petitioners to have caused summons to be issued and served within 180 days from March 6, 1979, the date the Council approved the tentative subdivision map, bars them from any relief as to the first cause of action. The trial court agreed.

Government Code section 66499.37 provides that any action or proceeding to set aside the decision of a legislative body concerning a subdivision map: "...shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 180 days after the date of such decision. Thereafter, all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations."

Summons on the petition was not issued or served at any time. Petitioners did not file or serve a notice of intention to apply for the writ. Respondents were not served with a copy of the petition with 10 days' notice of the hearing required under Code of Civil Procedure section 1088. An alternative writ with notice of hearing was not issued or served. The court did not allow the filing of the petition without notice pursuant to Code of Civil Procedure section 1107 and California Rules of Court, rule 56(b). (See 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 58, pp. 2548-2549.) Petitioners contend the respondents appeared generally in the action by executing and permitting to be filed within the 180-day period the stipulation extending the time for the hearing on the writ to September 6, 1980, 2 days after the 180-day period. They also argue that the answers to the petition, filed September 4, 1979, constitute a general appearance within the 180-day period (2 days are added for Sunday and Labor Day to extend that time to September 4).

These contentions pose a threshold question of jurisdiction of the trial court to proceed on the first cause of action.

The procedures to be followed to effect service of summons and complaint in a court action ordinarily are governed by the jurisdiction and service of process act (Code Civ. Proc., §§ 413.10-417.40). These procedures are intended to give the defendant fair notice of the pending action and an opportunity to defend. Absent appropriate service of process or a general appearance, jurisdiction is not acquired. Here, there was no service of process.

■ A general appearance may be made in a number of ways. Whether a particular act reflects an intent to submit to the jurisdiction of the court constituting a general appearance depends upon the circumstances (*Davenport* v. *Superior Court* (1920) 183 Cal. 506 [191 P. 911]; 1 Witkin, Cal. Procedure (2d ed. 1970) § 118, pp. 646-647). A written stipulation extending the time to appear, answer, demur or otherwise plead reflects an intent to submit to the jurisdiction of the court and constitutes a general appearance (*General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 453-454 [124 Cal.Rptr. 745, 541 P.2d 289]). ■ Here, the parties stipulated to a *continuance of the hearing* on the writ. No reservation of any right to contest jurisdiction was stated. ■ The filing of an answer following denial of a motion to quash for lack of jurisdiction constitutes a general appearance even though the answer includes objections to the jurisdiction of the court.

The general appearance waives irregularities in the service of process. (*Terzich* v. *Medak* (1978) 78 Cal.App.3d 636, 639 [144 Cal.Rptr. 323]; *Neihaus* v. *Superior Court* (1977) 69 Cal.App.3d 340 [137 Cal.Rptr. 905].) ■■ Here, respondents answered and by affirmative defense raised the issue of jurisdiction.

Respondents then contend the trial court found as a question of fact their appearances to be special and substantial evidence supports that finding. While the argument is ingenious, it is without merit on the record before us.

We conclude the execution and filing of the stipulation extending time and the filing and service of the answer constitute general appearances by respondents which waived any irregularities as to issuance or service of summons or other process. We now inquire whether the error of the trial court in dismissing the first cause of action requires reversal.

## The First Cause of Action

■■ Respondents contend that despite the error on the statute of limitations as to the first cause of action, the judgment may be upheld. This is so because the waiver of findings of fact mandate the assumption that the trial court found every fact essential to support the judgment, and findings will be implied in favor of the successful litigant upon all of the issues raised by the pleadings (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 310, p. 3118).

The argument is not in point. The court dismissed the first cause of action and did not consider the same. The judgment denying the writ, therefore, was predicated upon the surviving causes of action.

In the interests of judicial economy, however, we have reviewed the record to determine if substantial evidence otherwise warrants sustaining the judgment of dismissal (Code Civ. Proc., § 909; *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25 [101 Cal.Rptr. 240]). Petitioners have abandoned their appeal on the EIR cause of action (second). The resultant admission of EIR validity, argue respondents, constitutes substantial evidence as to propriety and adequacy of subdivision map findings by the Council. We agree.

The first cause of action alleges abuse of discretion by the city as substantial evidence exists to demonstrate the tentative map failed to

comply in all respects with Government Code section 66474, subdivisions (a) through (g). The second cause of action alleges EIR impacts in the areas of land use, landform modification, visual quality, biological resources and traffic generation.

The record on appeal includes resolution No. 222352, planned residential development permit No. 132, and resolution No. 222353, findings of the Council with respect to the EIR, both adopted December 5, 1978. On projects such as Nielsen's, the PRD and EIR go hand in hand and are considered at the same time. These resolutions, both of which relate to EIR impacts, include findings sufficient to comply with the subdivision map requirements of Government Code section 66474, subdivision (a) through (g). Accordingly, the abandonment of the appeal on the second cause of action is a sufficient admission of fulfillment of subdivision map requirements challenged in the first cause of action.

### The Third and Fourth Causes of Action

The petition alleges the obligation of the EIR to identify alternatives to the project and to consider the impacts produced by the project. The third and fourth causes of action plead the inadequacy of the EIR in these respects and the resultant abuse of discretion by the Council in certifying the EIR as being in compliance with CEQA. Neilsen's answer pleads petitioners are estopped from challenging the EIR for failure to raise these deficiencies at hearings before the administrative agencies and the Council.

The record on appeal does not include transcripts of any of such hearings. The trial court with the agreement of the parties proceeded to the merits of the third and fourth causes of action. The trial transcript discloses extensive discussion of the administrative record and argument on the issues. While the court alluded to a concept of estoppel in denying the writ as to these issues, it is clear the decision was on the merits.

### Mootness—Work on the Project

Following oral announcement by the court of its intended decision on September 14, 1979, Nielsen continued to process the project through the city. The final subdivision map was approved by the Council and recorded with the county recorder on July 25, 1980. Thereafter, Nielsen secured appropriate exemptions for the project from the San Diego Re-

gional Coastal Commission, which were not appealed and became final. Nielsen then commenced grading and other operations on the site. As of October 14, 1980, the date of oral argument here, some 95 per cent of planned grading had been accomplished and storm drains and sub-drains had been installed. The natural land contours of the canyon area of the project were substantially altered by the raising of the southerly end to an elevation 49. feet above the natural floor. The ridge top was graded and terraced and building pads have been formed. Natural vegetation, except in open space areas, has been eliminated.

Petitioners did not seek a temporary restraining order or preliminary injunction against Nielsen or the Council in the court below. They did not at any time apply to the lower court for a stay following denial of the writ or to this court for a stay pending appeal, by way of writ of supersedeas or otherwise.

### FAILURE TO STAY THE PROCEEDINGS ALLOWED THE FILING OF THE FINAL MAP

These proceedings were instituted under Code of Civil Procedure section 1094.5, as permitted under *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556]. Subdivision (g) of section 1094.5 provides, in part: "If an appeal is taken from a denial of the writ, the order or decision of the agency shall not be stayed except upon the order of the court to which such appeal is taken; provided that, in cases where a stay is in effect at the time of filing the notice of appeal, such stay shall be continued by operation of law for a period of twenty (20) days from the filing of such notice." As indicated above, no stay order was applied for or issued by this court or the trial court. Absent the stay, the city and Nielsen were at liberty to proceed with the processing of the subdivision map (see Cal. Administrative Mandamus (Cont.Ed.Bar 1966) Appeal from Judgment, §§ 15.11-15.12, pp. 267-268). This resulted in the approval and filing of the final map.

### MOOTNESS—EFFECT OF APPROVAL AND RECORDING OF THE FINAL MAP

■ Nielsen argues the approval by the Council and the filing by the county recorder of the final map moots the appeal. "The filing for record of a final or parcel map by the county recorder shall automatically

and finally determine the validity of such map and when recorded shall impart constructive notice thereof." (Gov. Code, § 66468.)

We summarize Nielsen's argument. Petitioners attacked only the tentative map in the trial court. The final map now embraces all of the terms, conditions and other matters set out in the tentative. Recordation of the final map "automatically and finally" determines its validity, and hence the validity of the tentative. Ergo, the issue is moot. We are not persuaded.

The Subdivision Map Act (Gov. Code, §§ 66410-66499.37) requires cities and counties to adopt ordinances regulating and controlling the design and improvement of subdivisions (Gov. Code, § 66411). San Diego has enacted such an ordinance (12066 NS) set out in section 102.0201.6 et seq. of the Municipal Code. Provisions of the Subdivision Map Act as to tentative and final maps are incorporated within the ordinance. Procedures for processing tentative maps and the requirements for such maps are those provided for in the Subdivision Map Act. Final maps are likewise processed under those procedures. The ordinance does not reserve to the Council discretion as to approvals of final maps. Accordingly, final maps are required to be approved by the Council if all of the requirements of the Subdivision Map Act and of the ordinance have been met. This necessarily includes the requirement that all of the conditions of the tentative map have been fulfilled. Approval of the final map in these circumstances is a ministerial act (*Great Western Sav. & Loan Assn.* v. *City of Los Angeles* (1973) 31 Cal.App.3d 403 [107 Cal.Rptr. 359]). Approval of the final map in effect is a confirmation that the tentative map requirements have been fulfilled. *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64 [141 Cal.Rptr. 282], reviewed the ordinance of the City of Morgan Hill concerning subdivision maps. There, the city council reserved rights to disapprove the final map. In holding the decision by the city council to approve the final map commenced the running of the 180-day period within which to file a lawsuit under Government Code section 66499.37, and distinguishing *Great Western, supra*, the court said at pages 69 to 70: "This procedural framework differs from the City of Los Angeles most significantly in that the code of Los Angeles *requires* that the city council accept the final map if it conforms to the tentative map, whereas the City Council of Morgan Hill need not approve the map unless it is satisfied with the plan of subdivision."

San Diego's ordinance parallels that of Los Angeles. We conclude the Council approval of and recordation of the final map here simply confirms the fulfillment of the tentative map conditions. While new rights may arise upon recordation, i.e., dedication of streets, access to coastline, school sites, parks and the like (Gov. Code, §§ 66477-66478), proposals for such dedication appear on the tentative map or may be required as conditions for approval of the final. Thus, approval and recordation and resultant final validity of the map do not per se moot issues framed as to the tentative map on this appeal. Moreover, the question of *validity* of a final map may be determined by a court if an action be brought within 180 days, even though the statute characterizes the recordation as an *automatic and final determination of validity* (*Save El Toro Assn., supra*, 74 Cal.App.3d 64).

### MOOTNESS—COMMENCEMENT OF WORK ON THE PROJECT

■ The Subdivision Map Act does not include any provisions as to consequences of commencement of work following approval of the final map where a timely challenge has been filed. San Diego Municipal Code (§ 102.0318) authorizes the city engineer to issue a permit for work *pending* approval of the final conditioned upon a bond to restore the property to its preexisting condition if a final map is not filed or approved. Such work pending approval is at the risk of the applicant.

Public Resources Code section 21167.3 creates a presumption of compliance with CEQA where an injunction is not sought or issued in a proceeding brought within 30 days from issuance of an EIR. Subsequent approval of the EIR constitutes permission to proceed with the project *at the applicant's risk* pending final determination of the lawsuit.

Thus, in at least two instances, work may go forward pending final approval of a project but at the risk of the applicant.

### MOOTNESS—COMPLETION OF LAND PREPARATION

We now consider whether the appeal is moot because of the grading, filling, clearing, drainage and other work accomplished by Nielsen.

In *Gogerty v. Coachella Valley Junior College Dist., supra*, 57 Cal.2d 727, judgment was entered on a demurrer sustained without

leave to amend on a complaint seeking declaratory relief and an injunction. The college district proposed to acquire a school site and to erect a school thereon. The complaint set out other agency findings of unsuitability because of the proximity of an airport, failure to hold requisite hearings, fraud and avoidance of statutory requirements. During the pendency of the appeal (no stay order in effect), the college district purchased the site and expended monies toward construction of the school. The judgment was reversed and the motion to dismiss denied. The court stated at page 729: "On a motion to dismiss an appeal where it is necessary to review the record, as it is in the present case, the motion will be denied and any contention that the question has become moot will be considered on its merits."

The court then concluded the plaintiff had standing to sue and the complaint stated causes of actions. *"Have the First and Second questions above discussed become moot as a result of defendants having purchased the property involved and spent considerable money toward construction of buildings on it?"*

*"No.* In the present case defendant district was aware from October 1959, and at all stages thereafter, that plaintiff was questioning its right to proceed with the construction and that the matter would have to be decided by the courts.

"Therefore, it is not in a position at this late date to complain of an injury which it brought upon itself when it proceeded at its own peril to continue the construction of buildings upon the site before the courts had finally determined that it had a right to do so." (*Gogerty, supra,* at p. 732; italics in original.)

In *Smith* v. *North, supra,* 244 Cal.App.2d 245, this court considered an appeal from a judgment denying an injunction to restrain defendants from building a proposed dwelling alleged to be in violation of tract building restrictions. A motion to dismiss for mootness was made on the grounds that the proposed dwelling had been completed pending the appeal. The court considered the merits of the appeal, affirmed the judgment and denied the motion to dismiss citing *Gogerty, supra,* 57 Cal.2d 727.

*County of Los Angeles* v. *Butcher* (1957) 155 Cal.App.2d 744 [318 P.2d 838], considered a motion to dismiss an appeal from a judgment dissolving a preliminary injunction and denying relief from alleged il-

legal lot divisions. The county claimed defendants subdivided a parcel into eight lots without filing a subdivision map. Pending the appeal, the defendants entered into land sale contracts as to some lots, and sold the others by deed. No stay orders were in effect. The court held the subsequent sales of lots rendered the appeal moot as to such lots. As to the land sale contracts, the court said at page 747: "If the judgment were reversed that would not undo the sales previously made to the persons now in possession under the contracts; and the granting of an injunction upon a new trial or pursuant to direction of this court could operate only upon resales made after default of contract purchasers—a thing now resting in the realm of possibility and speculation. Courts do not grant injunctions upon such an attenuated basis."

In *Roscoe v. Goodale* (1951) 105 Cal.App.2d 271 [232 P.2d 879], the court dismissed for mootness an appeal from an order denying a writ of mandate. The acting city engineer of Eureka sought a writ requiring the city to rescind a resolution for the improvement of public works and to cause the improvement to be carried out through other procedures. "It appears, without contradiction, from the documents and records filed in support of the motion to dismiss the appeal, that the contract and work referred to in the resolution and petition have been completed and accepted and paid for by the city of Eureka, and that even if we should agree with the main contention of petitioner and appellant, there is nothing that could be accomplished now by the issuance of a writ of mandamus." (*Id.* at p. 273.) The court concluded the question on appeal was moot and granted the motion to dismiss.

The issuance and sale of bonds for street improvements pending appeal from judgment on the pleadings in a lawsuit to annul a resolution authorizing the work moots the appeal (*Crangle v. City Council of Crescent City* (1933) 219 Cal. 239 [26 P.2d 24]).

The completion of and payment for public work projects by public agencies moots an appeal from action authorizing the work. That bell cannot be unrung. Where third party rights intervene, as in the sale of illegally subdivided lots to bona fide purchasers, appellate relief cannot be accomplished.

Here, however, a public project and public financing are not involved and third party rights have not intervened. On the issue as to mootness we deal with private property and a land developer.

We conclude the work accomplished by Nielsen does not moot this appeal. The tentative map was timely challenged by the filing of the petition for the writ of mandamus. The appeal from the judgment denying the writ was timely. No stay was sought or granted. As a result, the proceedings before the city seeking project approval continued without impediment.

Approval and recordation of the final map did not conclusively adjudicate the validity of the map. The tentative map having been timely attacked, controversy continued throughout the proceedings which did not terminate on recordation of the final.

Work on the project, i.e., drawings, engineering reports and the like during the tentative map approval stage, was at the risk of the applicant. Such work prior to recordation of the final was at like risk. Actual grading and other land improvement work accomplished pending the appeal are likewise at the risk of the applicant. This is so even in the absence of a stay order. The dissolution of a temporary restraining order or the denial of a preliminary injunction is not an adjudication on the merits. And a timely appeal from a denial of a writ of mandate cannot be mooted, in the circumstances here, by the performance of work on the project by the informed developer standing by with bulldozers at the ready. If otherwise, the absence of a stay invites the groundbreaking and completion of the work is a de facto approval of the project. Appellate rights survive the thrust of the bulldozer's blade. Mesa tops and canyons deserve their day in court.

Judgment affirmed. Motion to dismiss denied.

Staniforth, Acting P. J., and Wiener, J., concurred.