[Civ. No. 65530. Second Dist., Div. One. Apr. 28, 1983.]

RONALD E. SODERLING, Plaintiff and Appellant, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

502

COUNSEL

Knickerbocker, Perry & Fichter, Knickerbocker & Fichter, Richard L. Knickerbocker and Gregory C. Pearson for Plaintiff and Appellant.

Robert M. Myers, City Attorney, and Stephen Shane Stark, Assistant City Attorney, for Defendants and Respondents.

OPINION

**SPENCER, P. J.—**

## INTRODUCTION

Petitioner Ronald E. Soderling appeals from a judgment denying four consolidated petitions for writs of mandate by which petitioner sought to compel respondents the City of Santa Monica (City), and certain named officials thereof to perform the assertedly mandatory duty of approving four final maps within the purview of the Subdivision Map Act.

## STATEMENT OF FACTS

On June 5, 1978, the City's planning commission approved a tentative subdivision map, subject to specified conditions, for each of the four condominium conversion projects at issue herein. In each case, approval was "conditioned on and subject to" the completion of all repairs and improvements set forth in the comprehensive building condition report[1] and the installation of approved smoke detectors in each unit.

---

[1] The comprehensive building condition report is part V of the "notice of intent" which a property owner seeking permission for condominium conversion is required to file. It consists of a checklist completed by a building inspector and approved by the building officer and notes minor repairs, improvements and alterations necessary to bring a building into compliance with applicable housing standards.

On May 7, 1979, petitioner requested and received a 12-month extension of the original 12-month term of the tentative map. Thereafter, on May 9, 1980, petitioner requested that the city council approve his final tract maps. In his request, petitioner explained that certain repairs and improvements within the conditions attached to tentative map approval, including the installation of smoke detectors, had not been completed; he offered "to enter into an improvement contract with the city, with reasonable and appropriate security therefor . . . [t]o assure the city that the improvements will be completed prior to the sale of the units as condominiums."

The matter was heard by the city council on May 27, 1980, at which time petitioner was represented by counsel. The city council had received a staff report which recommended denial of the final maps: "Inasmuch as the conditions have not been met, the coastal commission has denied the conversion and the city is in the process of adopting new condominium conversion regulations which would most certainly conflict with the conditions imposed two years ago, it is respectfully submitted that no significant purpose would be achieved by granting a final tract map which in all probability may never be used." At the conclusion of the May 27, 1980 hearing, the city council denied final map approval "because the conditions imposed at the time of tentative map approval by the planning commission have not been met." Petitioner requested no further tentative map extensions.

CONTENTIONS

I

Petitioner contends his challenge to the validity of the conditions imposed in the tentative map approval is not barred by Government Code section 66499.37, in that the requirement the conditions be fulfilled prior to final map approval was first imposed at the hearing on petitioner's applications for final maps; hence, the limitations period began to run on that date.

II

Petitioner asserts that the conditions imposed were not authorized by the Subdivision Map Act or local ordinances; alternatively, he argues that the conditions were not enforceable until a sales campaign was commenced or conversion was completed.

III

Finally, the petitioner avers that it was a breach of mandatory duty for the city council to deny final map approval.

DISCUSSION

I

█ The threshold issue herein is petitioner's contention that his challenge to the conditions imposed by tentative map approval is not barred by Government Code section 66499.37. We find no merit in the contention.

Prior to its amendment in 1980 (Stats. 1980, ch. 1152, § 14), Government Code section 66499.37 provided that an appeal of "any action . . . to . . . review . . . the decision of an advisory agency concerning a subdivision" shall be made within 180 days. In those instances where the local statutory scheme provides for ministerial, as opposed to discretionary, approval of final maps by the local governing authority (i.e., the city council), the courts have construed section 66499.37 as requiring that a challenge be made to conditions imposed by tentative map approval within 180 days of the date of approval. (*Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 359 [176 Cal.Rptr. 620].) As *Kriebel* v. *City Council* (1980) 112 Cal.App.3d 693, 703 [169 Cal.Rptr. 340] noted: "Approval of the final map in effect is a confirmation that the tentative map requirements have been fulfilled."

In the instant setting, the city council has delegated its authority for the approval of tentative maps to the planning commission and its role in the approval of final maps hence has become that noted in *Kriebel*—confirming the compliance with all tentative map requirements. (See *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915, 926 [168 Cal.Rptr. 276].) Accordingly, if petitioner's claim herein is grounded solely on the validity of the conditions attached to the tentative map approval, more than two years before the commencement of the instant proceeding, it is plainly time-barred. (See also *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 885-886 [150 Cal.Rptr. 606].)

Petitioner attempts to avoid this result by characterizing the city council's denial of final map approval on the ground of failure to comply with tentative map conditions as the imposition of a new condition, in that the tentative map specifies no time for fulfillment of the conditions. Unfortunately, petitioner's stance ignores established law. █ The purpose of a conditional tentative map is to identify clearly the requirements to which a developer must conform; hence, he must demonstrate in his final map that he has resolved all of the deficiencies or problems enumerated in the tentative map. (*Great Western Sav. & Loan Assn.* v. *City of Los Angeles* (1973) 31 Cal.App.3d 403, 411 [107 Cal.Rptr. 359].) In other words, fulfillment of all tentative map conditions is, from the outset, a condition of final map approval. (See *Kriebel* v. *City Council, supra,* 112 Cal.App.3d 693, 703; Santa Monica Mun. Code, § 9123D.)

Clearly, petitioner's claim is not a challenge to the imposition of a "new" condition, but is grounded solely on the validity of those conditions enumerated in the tentative map. Accordingly, it is indeed time-barred.

II

Our resolution of the foregoing contention is dispositive of the instant appeal. Nonetheless, the trial court saw fit to reach the merits of petitioner's claim. Recognizing the continuing controversy raging over the scope of local authority to impose subdivision map approval conditions, and inasmuch as the issue was fully argued below, we also deem it prudent to reach the merits.

It is well established that the power to adopt supplementary ordinances or regulations pursuant to the Subdivision Map Act (Gov. Code, §§ 66410-66499.37) may be implied, where not expressly granted, as long as the provision at issue reasonably relates to the purposes of the act. (*Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 37 [207 P.2d 1, 11 A.L.R.2d 503]; *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 505 [113 Cal.Rptr. 539].) Moreover, the power need not be exercised by the specific enactment of an ordinance or promulgation of a regulation. "Where . . . no specific restriction or limitation on the city's power is contained in the charter and none *forbidding* the particular conditions is included either in the Subdivision Map Act or the city ordinances, it is proper to conclude that conditions are lawful which are not inconsistent with the map act and the ordinances and are reasonably required . . . ." (*Ayres* v. *City Council of Los Angeles, supra,* 34 Cal.2d 31, 37; italics added.)

The Subdivision Map Act vests in local governments the power to regulate and control the "design" and "improvement" of subdivisions. (Gov. Code, § 66411.) Included in the definitions of "design" and "improvement" is "such other specific requirements in the plan and configuration of the entire subdivision as may be necessary or convenient to insure conformity to or implementation of the general plan required by . . . this title . . . ." (Gov. Code, §§ 66418, 66419.) One objective of the City's general plan is to "promote safe housing for all," and to "protect the health and safety of the resident by the enforcement of standards, regulations, codes and procedures for the preservation of safe, sanitary and structurally sound housing accommodations." This is a permissible provision in a municipal general plan. (See Gov. Code, § 65303, subd. (h).)

Sections 9122 and 9123 of the Santa Monica Municipal Code, as adopted in 1977, were directed toward the implementation of the foregoing general plan objectives with respect to condominium developments and conversions. Section 9122A expresses an intent "to treat such projects differently from apartments

and like structures and to adopt development standards for the protection of the community and the purchasers of condominiums . . . ." Section 9123A prohibits the approval of a condominium project unless it is preceded by a review of the project's impact on "sound community planning, the economic, ecological, cultural and aesthetic qualities of the community, and on the public health, safety, and general welfare." Section 9123C, subdivision 3, provides that approval of a condominium conversion is subject to the condition that the "electrical, fire, and safety systems of the structure either are, or are proposed to be, in a condition of good repair and maintenance, including such alterations for [*sic*] repairs as are required by the Building Officer." Section 9123C further provides that nothing recited in this section shall preclude the planning commission "from imposing any additional conditions or requirements believed necessary to protect . . . the public health, safety and general welfare." The foregoing local statutory scheme reasonably may be construed as authorizing the imposition of the conditions "necessary or convenient to insure conformity to or implementation of the general plan . . ." (Gov. Code, §§ 66418, 66419).

Condominium projects are expressly defined as subdivisions within the meaning of the Subdivision Map Act (Gov. Code, § 66424), and contrary to petitioner's assertion, Government Code section 66427 does not prohibit the imposition of design-related conditions, but implicitly recognizes the breadth of local powers with respect to regulation of "the design and location of buildings in such a [condominium] project by or pursuant to local ordinances." Government Code section 66427.2 imposes no greater barrier to the regulation of design pursuant to local ordinance in the case of condominium conversion. While exempting the conversion of existing buildings into condominium projects from the operation of Government Code sections 66473.5 [prohibiting approval of a map absent a finding of consistency with the general plan], 66474 [mandating denial of map approval upon certain findings, including "the design . . . is not consistent with applicable general . . . plans"], and 66474.61 [pertaining to cities with a population greater than 2.8 million], section 66427.2 does not purport to limit local design regulation. Indeed, the statute expressly notes, "This section shall not diminish, limit or expand, *other than as provided herein,* the authority of any city . . . to approve or disapprove condominium projects." (Italics added.) Accordingly, it is significant that Government Code section 66427.2 does *not* exempt condominium conversions from the operation of Government Code section 66473, which mandates disapproval of a map "for failure to meet or perform any of the requirements or conditions imposed by this division [§§ 66410 to 66499.37] or local ordinance enacted pursuant thereto . . . ." Clearly, the denial of map approval is not only authorized, but *required,* for a failure to fulfill design conditions authorized by local ordinance.

In sum, we perceive nothing in the Subdivision Map Act which forbids the imposition of the instant conditions. Given the express and implied authority in

the Subdivision Map Act and the City's local ordinances for broad design regulations of condominium conversions, the tentative map conditions at issue herein "are lawful [if they] are not inconsistent with the map act and the ordinances and are reasonably required . . . ." (*Ayres* v. *City Council of Los Angeles, supra,* 34 Cal.2d 31, 37.)

Among the purposes of the Subdivision Map Act is the coordination of land use planning with the community pattern laid out by local authorities so that a particular project will not become an undue burden to the locality. (*Bright* v. *Board of Supervisors* (1977) 66 Cal.App.3d 191, 194 [135 Cal.Rptr. 758].) Hence, the regulation of design features reasonably related to easing the burden a subdivision will impose on local agencies responsible for the protection and maintenance of public health and safety are not inconsistent with the purposes of the map act. Among the specifically enumerated items contained within Government Code section 66418's definition of "design" are "street alignments," "drainage and sanitary facilities," "fire roads and fire breaks," "traffic access" and "grading." This is illustrative of the broad scope of public health and safety factors considered a proper subject of design regulation.

It cannot be gainsaid that requiring the installation of smoke detectors in a multi-unit building, as well as general conformity with building standards, comes within the definitional scope of section 66418 and bears a reasonable relation to the maintenance and protection of public health and safety. (Cf. *Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95, 100-101 [222 P.2d 439]; see also 43 Ops.Cal.Atty.Gen. 89 (1964).) Accordingly, the conditions imposed are a presumptively valid exercise of the City's police power. Nonetheless, petitioner relies on *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241, 246 [129 Cal.Rptr. 882] for the proposition that the state housing law, commencing with section 17910 of the Health and Safety Code, and the State Building Standards Code adopted pursuant thereto (Cal. Admin. Code, tit. 25) preempt local regulation of fire detection and safety devices. Petitioner's statement of the general rule is correct. However, the state has preemptively occupied the field of building regulation only to the extent of subjects expressly covered by the applicable building code; local regulation of subjects not so expressly covered, consistent with the applicable code, is permissible. (*Baum Electric Co.* v. *City of Huntington Beach* (1973) 33 Cal.App.3d 573, 583 [109 Cal.Rptr. 260].)

Regulations and building standards related to use, maintenance and a change of occupancy apply to existing structures. (Health & Saf. Code, § 17912; Cal. Admin. Code, tit. 25, art. I, § 2, subd. (b).) Although the California Administrative Code does not expressly establish fire safety standards for existing residential structures except those "let for human habitation" (tit. 25, art. 7, § 80, subd. (b)), section 2-1233 of title 24 provides: "Existing buildings hous-

ing Group R [residential] Occupancies established prior to the effective date of these regulations may have their use continued if they conform or are made to conform to the provisions of these regulations to the extent that reasonable and adequate life safety against fire . . . is substantially provided. Additional means of egress, the installation of automatic fire alarm systems *or other life safety measures* may be required to provide reasonable and adequate safety." (Italics added.) The note accompanying section 2-1233 states: "It is the intent of this section that every existing occupancy need not mandatorily conform with these requirements for new construction. Reasonable judgment in the application of requirements must be exercised by the enforcing agency."

The foregoing evinces an intent that local enforcement arms exercise considerable discretion in determining the measures necessary to ensure "reasonable and adequate safety" in existing residential buildings to the extent contemplated by the State Building Standards Code. In our view, section 2-1233 of title 24 of the California Administrative Code provides ample authority for the City's planning commission to condition the subdivision of an existing apartment building into condominiums, with its concomitant change of occupancy, on the installation of smoke detectors.[2] Accordingly, state preemption of the field encompassing the smoke detector condition does not render it invalid.[3]

III

Petitioner's averment that it was a breach of mandatory duty for the city council to deny approval of his final maps merits little discussion. Where a tentative map is approved subject to conditions and those conditions remain unfulfilled, approval of a final subdivision map is *not* a ministerial act. (*Tosh* v. *California Coastal Com.* (1979) 99 Cal.App.3d 388, 395 [160 Cal.Rptr. 170]; cf. *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 648 [150 Cal.Rptr. 242, 586 P.2d 556]; *Great Western Sav. & Loan Assn.* v. *City of Los Angeles, supra,* 31 Cal.App.3d 403.) To the contrary, Government Code section 66473 provides: "A local agency *shall disapprove* a map for failure to meet or perform conditions imposed . . . ." Hence, the city council retained discretion only to determine whether there had been substantial compliance with the conditions; thereafter, performance of its mandatory statutory duty required disapproval of petitioner's final maps.

---

[2]We note that if the conversion to condominium ownership is *not* viewed as a change of occupancy, the regulations promulgated pursuant to the state housing law have no applicability to the instant situation and the issue of preemption is thereby avoided. (Health & Saf. Code, § 17912.)

[3]No challenge is leveled against the remaining conditions on the ground of preemption.

The judgment is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

A petition for a rehearing was denied May 24, 1983, and appellant's petition for a hearing by the Supreme Court was denied July 27, 1983. Mosk, J., was of the opinion that the petition should be granted.