BILL LOCKYER Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE ANN MOORE, CITY PROSECUTING ATTORNEY, CITY OF CHULA VISTA, has requested an opinion on the following question:
May a city council enter into a subdivision improvement agreement with a condominium developer if one of the council members is a renter in the complex being converted to condominiums where (1) a tentative map was approved for the project requiring a tenant financial assistance program, (2) the council member became a tenant after approval of the tentative map and has not participated in any consideration of the subdivision improvement agreement, and (3) the agreement is part of the final map approval process and contains the conditions of the tentative map?
 CONCLUSION
A city council may enter into a subdivision improvement agreement with a condominium developer even though one of the council members is a renter in the complex being converted to condominiums where (1) a tentative map was approved for the project requiring a tenant financial assistance program, (2) the council member became a tenant after approval of the tentative map and has not participated in any consideration of the subdivision improvement agreement, and (3) the agreement is part of the final map approval process and contains the conditions of the tentative map.
 ANALYSIS
The Subdivision Map Act (Gov. Code, §§ 66410-66499.37)[1]
regulates the design, improvement, and sale of land subdivisions throughout California. (City of West Hollywood v. BeverlyTowers, Inc. (1991) 52 Cal.3d 1184, 1189; Soderling v. City ofSanta Monica (1983) 142 Cal.App.3d 501, 506.) To comply with statutory requirements, a landowner proposing to subdivide property into five or more parcels, condominiums, community apartment parcels, or stock cooperative dwelling units must prepare a tentative map and a final map for the proposed subdivision. (§ 66426; Van't Rood v. County of Santa Clara
(2003) 113 Cal.App.4th 549, 564; 81 Ops.Cal.Atty.Gen. 166 (1998).) A city or county may approve a tentative map subject to the developer's fulfilling certain conditions, such as providing public improvements or donating land or money for purposes related to the proposed development. (Youngblood v. Board ofSupervisors (1978) 22 Cal.3d 644, 6556-56; 81 Ops.Cal.Atty.Gen. 373, 374 (1998); 79 Ops.Cal.Atty.Gen. 149, 150 (1996).)
If a developer presents a final map of a subdivision that substantially complies with the conditions that were placed on the tentative map at the time it was conditionally approved, the city or county is required to approve the final map. (§§ 66458, subd. (a), 66474.1; Youngblood v. Board of Supervisors, supra,
22 Cal.3d at p. 656 [approval of final map becomes a "ministerial act" where final map is in substantial compliance with the previously approved tentative map]; Great Western Sav. LoanAssn. v. City of Los Angeles (1973) 31 Cal.App.3d 403, 411-414.) Where tentative map conditions remain unfulfilled or unperformed, the city or county is generally required to disapprove the final map. (§ 66473; Soderling v. City of Santa Monica, supra,
142 Cal.App.3d at p. 509.) However, where the developer has not yetcompleted public improvements required under the tentative map, the city or county may nonetheless approve the final map by requiring the developer to enter into a subdivision improvement agreement in which the developer agrees to complete the improvements at his or her own expense or provide sufficient security to ensure their completion. (§ 66462, subd. (a); 79 Ops.Cal.Atty.Gen., supra, at p. 151.)
We are informed that the city council of a charter city has approved a tentative map for an apartment-to-condominium conversion project. The tentative map included a condition that the developer provide financial assistance to those persons renting in the complex prior to the conversion. It was agreed that each tenant would receive (1) a refund of his or her security deposit and (2) either a $1,000 relocation grant or a $3,000 purchase credit. After the city council approved the tentative map, a member of the city council began renting an apartment in the complex on a month-to-month basis.
The question presented for resolution is whether, under the circumstances presented, the city council and the condominium developer may execute a subdivision improvement agreement incorporating the condition of the tentative map that the developer must provide tenant financial assistance, where the council member who would receive the financial assistance has not participated, and will not participate, in any consideration of the proposed agreement. We conclude that the agreement may be executed in compliance with the requirements of section 1091, subdivision (b)(5).
In addressing this question, we focus upon whether execution of the proposed agreement would violate the prohibition of section 1090, which provides in relevant part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."
Section 1090 is concerned with financial interests, other than remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their agencies. (Stigall v.Taft (1962) 58 Cal.2d 565, 569.) Under section 1090, "the prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996)48 Cal.App.4th 289, 333.) When section 1090 is applicable to one member of the governing body of a public entity, the prohibition cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (Thomson v. Call (1985) 38 Cal.3d 633, 647-649;Stigall v. City of Taft, supra, 58 Cal.2d at p. 569; City ofImperial Beach v. Bailey (1980) 103 Cal.App.3d 191, 197; 86 Ops.Cal.Atty.Gen. 138, 139 (2003); 70 Ops.Cal.Atty.Gen. 45, 48 (1987).) A contract that violates section 1090 is void (Thomsonv. Call, supra, 38 Cal.3d at p. 646), and a public official found to have willfully violated section 1090 is subject to criminal prosecution (§ 1097; see People v. Gnass (2002)101 Cal.App.4th 1271, 1297).
We have previously determined that a "development agreement" between a city and a developer, allowing a development project to proceed in accordance with existing policies and regulations (§§ 65864-65869), constitutes a "contract" for purposes of section 1090. Both parties to such an agreement mutually consent to its terms and receive consideration for entering into it. (78 Ops.Cal.Atty.Gen. 230, 231-234 (1995); see Civ. Code, §§ 1549,1550; 85 Ops.Cal.Atty.Gen. 34, 35 (2002); 83 Ops.Cal.Atty.Gen. 59, 60 (2000).)
Similarly, here, we find that a subdivision improvement agreement constitutes a "contract" for purposes of section 1090. Under this type of agreement, both parties mutually consent to its terms and conditions (§ 66462) for mutual consideration. The developer secures approval of his or her final subdivision map even though certain previously bargained-for improvements have not been completed, and the city or county may approve the final map with the assurance that such improvements will be completed.
Would the city council member in question have a personal financial interest in the proposed agreement? By virtue of his status as a tenant in the complex that is the subject of the agreement, he will receive tenant assistance funds disbursed under the agreement. Accordingly, he will have a personal financial interest in the agreement. (See Thomson v. Call,supra, 38 Cal.3d at p. 649; 88 Ops.Cal.Atty.Gen. 122, 124 (2005).)
However, not all financial interests come within section 1090's prohibition. The Legislature has identified certain financial interests as "remote interests" (§ 1091) and "noninterests" (§ 1091.5). (See Citizen Advocates, Inc. v. Board of Supervisors
(1983) 146 Cal.App.3d 171, 178-179; Fraser-Yamor Agency, Inc. v.Del Norte County (1977) 68 Cal.App.3d 201, 217-218; 81 Ops.Cal.Atty.Gen., supra, at pp. 375-376.) If a "remote interest" is present, as defined in section 1091, the contract may be made if (1) the officer in question discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract. (§ 1091, subd. (a); 87 Ops.Cal.Atty.Gen. 23, 252-6 (2004); 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 2352-37.) If a "noninterest" is present, as defined in section 1091.5, the contract may be made with the officer's participation, usually without any requirement that the noninterest be disclosed. (City of Vernonv. Central Basin Mun. Water Dist. (1999) 69 Cal.App.4th 508,515; 88 Ops.Cal.Atty.Gen. 106, 108 (2005).)
In addition, the Legislature has granted specialized exemptions from the prohibition of section 1090, including one involving land subdivisions. Section 1091.1 states:
 "The prohibition against an interest in contracts provided by this article or any other provision of law shall not be deemed to prohibit any public officer or member of any public board or commission from subdividing lands owned by him or in which he has an interest . . . provided, that (a) said officer or member of such board or commission shall first fully disclose the nature of his interest in any such lands to the legislative body having jurisdiction over the subdivision thereof, and (b) said officer or member of such board or commission shall not cast his vote upon any matter or contract concerning said subdivision in any manner whatever."
If the city council member in question was the developer of the project, and not merely a tenant of the developer, the terms of section 1091.1 would cover the proposed subdivision improvement agreement between the city council and the developer. The city council could execute the agreement as long as the council member disclosed his financial interest and abstained from voting. (See 81 Ops.Cal.Atty.Gen., supra, at pp. 374-377.)
The Legislature has created a similar result where the city council member is merely a tenant of the developer. The "remote interest" exception for a tenant of a contracting party is set forth in section 1091, subdivision (b)(5):
 "As used in this article, `remote interest' means any of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(5) That of a landlord or tenant of the contracting party."
Hence, the city council may execute the subdivision improvement agreement while one of its members is a tenant of the developer, as long as the council member discloses his financial interest in the agreement, the interest is noted in the city council's official records, and the council member does not participate in the making of the agreement. (See 84 Ops.Cal.Atty.Gen. 158, 160 (2001).) We recognize that, given the prospect of tenant financial assistance under the subdivision improvement agreement, the council member's financial interest here goes beyond the typical rental agreement between landlord and tenant. Nevertheless, the proposed financial assistance program is based solely upon the landlord-tenant relationship, it was approved by the city council when no city council member was a tenant of the developer, and it will be available equally to all tenants in the complex. The critical factor is that the council member has not participated, and will not participate, in the consideration or execution of the agreement.
Finally, although the focus of this opinion is upon whether the city council may enter into the proposed subdivision improvement agreement in light of section 1090's prohibition, we note that the council member's abstention on matters related to the agreement would be required under the Political Reform Act of 1974 (§§ 81000-91014) as well. This statutory scheme generally prohibits public officials from participating in governmental decisions in which they have a "financial interest." (§ 87100.) Here, the council member would qualify as a "public official," a term that encompasses "every member, officer, employee or consultant of a local government agency. . . ." (§ 82048; see 58 Ops.Cal.Atty.Gen. 345, 352-353 (1975).) He would have a proscribed "financial interest" in the city council's decision to enter into the proposed agreement since "it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, [or] a member of his or her immediate family. . . ." (§ 87103.) A financial effect includes increasing or decreasing the personal expenses, income, assets, or liabilities of the official or a member of the official's immediate family (Cal. Code Regs., tit. 2, § 18703.5), and a public official is deemed to be directly involved in a governmental decision that has any financial effect on his or her personal finances (Cal. Code Regs., tit. 2, § 18704.5, subd. (a)). To be considered "material," the financial effect must amount to at least $250 in a 12-month period. (Cal. Code Regs., tit. 2, § 18705.5.) Unless a statutory exception applies, a public official who has a disqualifying financial interest in a governmental decision must abstain from participating in every aspect of the decision-making process. (§ 87100; Cal. Code Regs., tit. 2, §§ 18700, 18702.1; see Hamilton v. Town of Los Gatos (1989)213 Cal.App.3d 1050, 1058-1059; 86 Ops.Cal.Atty.Gen.142, 143 (2003).) The official must also avoid attempting to use his or her official position to influence the decision, defined as when "the official contacts, or appears before, or otherwise attempts to influence any member, officer, employee or consultant of the agency." (Cal. Code Regs., tit. 2, § 18702.3, subd. (a).)
We conclude that a city council may enter into a subdivision improvement agreement with a condominium developer even though one of the council members is a renter in the complex being converted to condominiums where (1) a tentative map was approved for the project requiring a tenant financial assistance program, (2) the council member became a tenant after approval of the tentative map and has not participated in any consideration of the subdivision improvement agreement, and (3) the agreement is part of the final map approval process and contains the conditions of the tentative map.
[1] All further references to the Government Code are by section number only.