BILL LOCKYER Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE JIM BATTIN, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city council enter into a subdivision improvement agreement and a reimbursement agreement with a landowner who is the employer of a member of the city council, where each agreement is related to public improvements that are required by the Subdivision Map Act and the city's subdivision ordinances?
 CONCLUSION
A city council may enter into a subdivision improvement agreement and a reimbursement agreement with a landowner who is the employer of a member of the city council, where each agreement is related to public improvements that are required by the Subdivision Map Act and the city's subdivision ordinances, provided that the city council member discloses his interest in the subdivision and abstains from voting on any matter concerning the subdivision.
 ANALYSIS
The Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Act")[1]
regulates the design, improvement, and sale of subdivisions throughout California. (City of West Hollywood v. Beverly Towers, Inc. (1991)52 Cal.3d 1184, 1189; Soderling v. City of Santa Monica (1983)142 Cal.App.3d 501, 506.) To comply with the Act's requirements, a landowner proposing to subdivide property into five or more parcels, condominiums, community apartment parcels, or stock cooperative dwelling units must generally prepare a tentative map and a final map for the proposed subdivision. ( § 66426; Van't Rood v. County of Santa Clara (2003)113 Cal.App.4th 549, 564; 81 Ops.Cal.Atty.Gen. 166 (1998).) A city or county may approve a tentative map subject to the landowner's fulfilling certain conditions, such as providing public improvements or donating land or money for purposes related to the proposed development. (Youngblood v. Board of Supervisors (1978) 22 Cal.3d 644, 655-656;81 Ops.Cal.Atty.Gen. 373, 374 (1998); 79 Ops.Cal.Atty.Gen. 149, 150
(1996).)
Where a landowner has not yet completed public improvements required as part of the conditional approval of a tentative map, the city or county may nonetheless approve the final map by requiring the landowner to enter into a "subdivision improvement agreement" whereby the landowner agrees to complete the improvements at his or her own expense or provide sufficient security to ensure their completion. (§§ 66462, subd. (a), 66499; 89 Ops.Cal.Atty.Gen. 193, 194 (2006); 79 Ops.Cal.Atty.Gen., supra, at p. 151.)[2] In addition, the city or county may require the landowner to install improvements that are larger than what would be necessary for the subdivision so that property outside the proposed subdivision is benefitted. In such circumstances, the city or county must enter into a "reimbursement agreement" under which the landowner is reimbursed for the costs attributable to that portion of the improvements not needed by the proposed subdivision. ( §§ 66485-66487; 81 Ops.Cal.Atty.Gen., supra, at pp. 374-375; see also71 Ops.Cal.Atty.Gen. 163, 163-164 (1988).)
We are informed that a member of a city council has become employed by a landowner who regularly subdivides property within the city's boundaries. The council member receives a salary from the landowner, but the amount of compensation is not based upon work on a particular subdivision or upon the result of any particular subdivision's approval or disapproval.
The question presented for resolution is whether, under the circumstances presented, the city council may execute a subdivision improvement agreement and a reimbursement agreement with the landowner. We conclude that the city council may do so provided that the council member discloses his interest in the subdivision and abstains from voting on any matter relating to the subdivision.
In addressing this question, we focus upon the prohibition of section 1090, which provides in relevant part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."
Section 1090 is concerned with financial interests, other than remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their agencies. (Stigall v. Taft (1962) 58 Cal.2d 565,569.) Under section 1090, "the prohibited act is the making of a contract in which the official has a financial interest." (People v.Honig (1996) 48 Cal.App.4th 289, 333.) When section 1090 is applicable to one member of the governing body of a public entity, the prohibition cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (Thomson v. Call (1985) 38 Cal.3d 633, 647-649; Stigall v. City ofTaft, supra, 58 Cal.2d at p. 569; City of Imperial Beach v. Bailey
(1980) 103 Cal.App.3d 191, 197; 86 Ops.Cal.Atty.Gen. 138, 139 (2003);70 Ops.Cal.Atty.Gen. 45, 48 (1987).) A contract that violates section 1090 is void (Thomson v. Call, supra, 38 Cal.3d at p. 646), and a public official found to have willfully violated section 1090 is subject to criminal prosecution ( § 1097; see People v. Gnass (2002)101 Cal.App.4th 1271, 1297).
We have previously determined that subdivision improvement agreements and reimbursement agreements executed during the subdivision map approval process constitute "contracts" for purposes of section 1090. (89 Ops.Cal.Atty.Gen., supra, at p. 195; 81 Ops.Cal.Atty.Gen.,supra, at pp. 374-376.) We have also previously determined that an employee has a financial interest in contracts that his or her employer executes with a public agency. (See, e.g., 88 Ops.Cal.Atty.Gen. 106,108-110 (2005); 58 Ops.Cal.Atty.Gen. 670, 677-678 (1975).)
However, not all financial interests come within section 1090's prohibition. In addition to certain financial interests that the Legislature has identified as "remote interests" ( § 1091) and "noninterests" ( § 1091.5),[3] the Legislature has granted specialized exemptions from the prohibition of section 1090 ( §§ 1091.1, 1091.2, 1091.3, 1091.4). Of particular significance to the present inquiry is the exemption pertaining to subdivisions that are subject to the provisions of the Act. Section 1091.1 states:
 "The prohibition against an interest in contracts provided by this article or any other provision of law shall not be deemed to prohibit any public officer or member of any public board or commission from subdividing lands owned by him or in which he has an interest and which subdivision of lands is effected under the [Act] or any local ordinance concerning subdivisions; provided, that (a) said officer or member of such board or commission shall first fully disclose the nature of his interest in any such lands to the legislative body having jurisdiction over the subdivision thereof, and (b) said officer or member of such board or commission shall not cast his vote upon any matter or contract concerning said subdivision in any manner whatever."
The subdivision improvement agreement and reimbursement agreement under consideration here would constitute part of the "subdivision of lands . . . effected under the [Act] . . ." within the meaning of section 1091.1. Thus, if the city council member were the landowner, and not merely an employee of the landowner, the terms of section 1091.1 would allow him to subdivide "lands owned by him," including the execution of a subdivision improvement agreement and a reimbursement agreement, as long as he disclosed his interest in the subdivision and abstained from voting on any matter concerning the subdivision. (See, e.g., 89 Ops.Cal.Atty.Gen., supra, at pp. 196-197; 81 Ops.Cal.Atty.Gen., supra, at pp. 376-378.) Does this exemption extend to a public official who is an employee of the landowner?
To answer this question, we apply well established rules of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers,Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821,826.) In so doing, we "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (Dyna-Med, Inc. v. FairEmployment Housing Com. (1987) 43 Cal.3d 1379, 1386-1387.) "Of course, we interpret a statute in context, examining legislation on the same subject, to determine the Legislature's probable intent." (California Teachers Association v. Governing Bd. of Rialto UnifiedSchool Dist. (1977) 14 Cal.4th 627, 642.) "It is elementary that, absent indications to the contrary, `a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portion of the law. . . .' [Citation.]" (County of San Bernardino v. City of San Bernardino (1977)15 Cal.4th 909, 926; accord, Curle v. Superior Court (2001)24 Cal.4th 1057, 1067.) Finally, we are to avoid, if possible, "an interpretation that would lead to absurd consequences." (People v. Jenkins (1995)10 Cal.4th 234, 246.)
Since section 1091.1's enactment in 1959 (Stats. 1959, ch. 628, § 1), its reference to "lands owned by him or in which he has an interest" has remained unchanged. The Legislature has never restricted the term "an interest" to, for example, "an ownership interest," "a legal interest," or "a beneficial interest." We find no reason to employ a more restrictive definition than that used to evaluate whether a public official has an "interest" in a particular contract for purposes of section 1090. To hold such an interest, the public officer or employee need not "acquire a transferable interest in the forbidden contract," nor must "the officer share directly in the profits to be realized from a contract." (See People v. Honig, supra,48 Cal.App.4th at p. 315.)[4] Rather, the conflict-of-interest statutes are concerned withany personal financial interests, other than those judged by the Legislature to be remote or minimal, that "would prevent the officials involved from exercising absolute loyalty and undivided allegiance" to the public agency they are elected or appointed to serve. (Ibid.)
A contrary determination would produce an anomalous result. It would mean that a subdivision could proceed if the public officer was the subdivider but not if the officer was merely the employee of the subdivider. We may not so construe the terms of section 1091.1 under the governing rules of statutory construction.
Finally, as previously observed in 81 Ops.Cal.Atty.Gen. 373,supra, a significant reason underlying this statutory exemption is the recognition that a contract "effected under the provisions of" the Act and local implementing ordinances is essentially mandated by statute. (Id. at pp. 376-378; see §§ 66462, subd. (a), 66499 [subdivision improvement agreement]; 66485-66487 [reimbursement agreement].) In our 1998 opinion, we observed with respect to a reimbursement agreement executed by a county board of supervisors and a group of subdividers who included a county supervisor:
 "While subdivision approval may be said to be a `benefit' received by the subdivider, the Legislature has determined that such benefit should not bar a public official `from subdividing lands owned by him' ( § 1091.1) pursuant to the Act's requirements and local ordinances adopted thereunder. Even if the reimbursement could be viewed as a benefit, neither the subdivider nor the local agency has any choice in the matter; once the local agency orders the supplemental capacity, it is required by law to provide for reimbursement through an agreement.
 " . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 " . . . [T]he supplemental capacity reimbursement procedure for subdivisions is mandated by statute. The reimbursement amount is dictated by the costs of construction; it is not subject to negotiation so as to cause an appearance of impropriety. The supervisor in question may only recover his actual costs — no more, no less — in being required to benefit property located outside the subdivision.
 "As the reimbursement procedure set forth in sections 66485-66489 arises directly from the subdivision process specified in section 1091.1, is mandated by statute, and does not involve negotiations that would cause an appearance of impropriety, we conclude that a county board of supervisors may enter into an agreement with the subdividers of a parcel of property that would require the installation of a larger storm drain system than necessary for the particular subdivision, with the county reimbursing the subdividers for the additional cost, even though a member of the board of supervisors has an ownership interest in the parcel. Of course, pursuant to the provision contained in section 1091.1, the supervisor would be required to fully disclose the nature of his interest in the land to be subdivided and may not cast his vote on any matter pertaining to the subdivision, including the reimbursement agreement." (Ibid.)
These same considerations may be applied to a subdivision improvement agreement. The landowner must guarantee that the specified improvements will be made, or face disapproval of his or her final map. (See §§ 66462, subd. (a), 66499; see also § 66473; Soderling v. City of SantaMonica, supra, 142 Cal.App.3d at p. 509.)[5] Most importantly, section 1091.1 requires that the person claiming the exemption "shall first fully disclose the nature of his interest" and "shall not cast his vote upon any matter or contract concerning said subdivision in any manner whatever."[6]
We conclude that a city may enter into a subdivision improvement agreement and a reimbursement agreement with a landowner who is the employer of a member of the city council, where each agreement is related to public improvements that are required by the Act and the city's subdivision ordinances, provided that the city council member discloses his interest in the subdivision and abstains from voting on any matter concerning the subdivision.
[1] All further references to the Government Code are by section number only.
[2] If a landowner presents a final map of a subdivision that substantially complies with the conditions that were placed on the tentative map at the time it was conditionally approved, the city or county is required to approve the final map. (§§ 66458, subd. (a), 66474.1.) Conversely, where tentative map conditions remain unfulfilled or unperformed, the city or county is generally required to disapprove the final map. ( § 66473; Soderling v. City of Santa Monica,supra, 142 Cal.App.3d at p. 509.)
[3] If a "remote interest" is present, as defined in section 1091, the contract may be made if (1) the officer in question discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract. ( § 1091, subd. (a); 87 Ops.Cal.Atty.Gen. 23, 25-26 (2004);83 Ops.Cal.Atty.Gen. 246, 248 (2000).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made with the officer's participation, usually without any requirement that the noninterest be disclosed. (City of Vernon v. Central Basin Mun. Water Dist. (1999)69 Cal.App.4th 508, 515; 88 Ops.Cal.Atty.Gen., supra, at p. 108.) These exceptions to section 1090's prohibition are not applicable in the circumstances presented here.
[4] The existence of employment-based remote and noninterest exceptions to section 1090's prohibition (see §§ 1091, subds. (b)(1), (b)(2), (b)(3), 1091.5, subds. (a)(11), (a)(12), (a)(13), (b)) further demonstrates that the Legislature finds employees to be generally interested in contracts made by their employers, but that in certain circumstances such interests may not prevent execution of the contracts.
[5] In contrast, for example, development agreements that cities and counties may execute with developers are not effected under the Act, but rather under a different statutory scheme ( §§ 65864-65869; see85 Ops.Cal.Atty.Gen. 34, 35 (2002); 78 Ops.Cal.Atty.Gen. 230, 231-234
(1995)), and thus are not covered by the language of section 1091.1.
[6] The Political Reform Act of 1974 ( §§ 81000-91014) generally prohibits public officials from participating, either directly or indirectly, in "governmental decisions" in which they have a financial interest. (See § 87100; 88 Ops.Cal.Atty.Gen. 32, 33-34 (2005);78 Ops.Cal.Atty.Gen. 362, 368-374 (1995); 74 Ops.Cal.Atty.Gen. 82, 86
(1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) Since we conclude here that the council member may not participate, either directly or indirectly, in any matter involving the subdivision due to the requirements of section 1091.1, we need not further analyze the provisions of this additional statutory scheme.