Filed 7/7/14   Civilian Conserv. Corps Camp Interest Group v. Valley Center Pauma Unified School Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CIVILIAN CONSERVATION CORPS CAMP INTEREST GROUP, | D064428 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00044300-CU-PT-NC) |
| VALLEY CENTER PAUMA UNIFIED SCHOOL DISTRICT, | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Kevin K. Johnson, APLC, Kevin K. Johnson, Jeanne L. MacKinnon; Law Offices of Kelly Aviles and Kelly Aviles for Plaintiff and Appellant.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Robert M. Mahlowitz for Defendants and Respondents.

After defendants Valley Center Pauma Unified School District and its board of trustees (together District) partially demolished some structures on land the school district owned, plaintiff Civilian Conservation Corps Camp Interest Group (Petitioner) filed this action alleging two claims. The first claim, which purported to state a cause of action under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA), alleged District should have complied with CEQA before partially demolishing the buildings but did not do so. The second cause of action, which purported to state claims under the Brown Act (Gov. Code, § 54950 et seq.)[1] (Brown Act), alleged District's board of trustees (Board) discussed and approved the demolition outside of a public meeting, gave inadequate notice of the public meeting at which the pre-approved demolition was to be ratified, and did not make certain documents available to the public.

District demurred to Petitioner's first amended complaint and petition (FAC) and the trial court sustained the demurrer without leave to amend. Petitioner asserts the ruling on the demurrer was erroneous as a matter of law, and denying leave to amend to cure any defects was an abuse of discretion.

---

[1]     All further statutory references are to the Government Code unless otherwise specified.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Facts[2]

In 2011, District acquired land from the California Department of Forestry (property). The property is adjacent to an elementary school under District jurisdiction, and had seven Depression-era buildings constructed on it that had some historic value.

Around February 5, 2013, District's chief business officer, Ms. Kimball, received a structural assessment for the buildings that concluded all of the buildings would have questionable stability during a major seismic event and could contain lead-based paint, and six of the seven buildings presented significant health and safety risks because of possible biohazard conditions and compromised structural integrity. On February 8, 2013, District also hired a firm to perform a hazardous building materials evaluation and, on February 13, 2013, District's Superintendent Obermeyer accepted a proposal for a contract with AAA Demolition to demolish the buildings but to leave the foundation

_____

2    Because the challenged ruling arises in the context of a demurrer, we accept as true the material factual allegations of Petitioner's FAC as the operative pleading at issue (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 806), and also accept as true all matters properly subject to judicial notice (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), but not "contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) Moreover, our factual recitation is guided by the oft stated rule that, when examining the propriety of the ruling on a demurrer, the courts " 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' " (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).)

3

slabs in place. Before demolition began, District received the results of the hazardous building materials evaluation that determined the buildings had asbestos and lead-based paints, and provided those results to AAA Demolition, which relayed the report to an abatement company for pricing. On February 28, District retained a company to transport "non friable asbestos waste" and obtained confirmation the electric meters at the site had been removed and service had been shut off.

At a March 14, 2013, public meeting of District's Board,[3] the Agenda listed, as an item of business under the superintendent's division, that "[t]he Board will hear an update on the California Department of Forestry Property" for "Information/Possible Action." At that meeting, three people (including Mr. Vick and Mr. Brown, members of Petitioner) spoke in favor of preserving the buildings, after which the District presented its findings on the condition of the buildings. After two more speakers commented on whether to preserve the buildings, the Board adopted a motion (the directive) that directed District staff to "move forward and clear the site and prepare the site for future school district use."[4]

---

[3] The adequacy of the notice and the Board's activities are at the core of Petitioner's Brown Act claim.

[4] Petitioner has filed a motion for judicial notice in this court seeking judicial notice of nearly 800 pages of materials, including a transcript of the Board meeting at which the demolition was approved. We grant the motion as to exhibits F and G for the reasons discussed at footnote 7, *post*. However, the remaining documents are either unnecessary to the issues presented in this appeal (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 [court "may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal"]) or are duplicative of documents already a part of Petitioner's appellate record (*Bravo Vending v. City of Rancho Mirage* (1993) 16

On March 18, 2013, over Petitioner's objections, District began demolition efforts. By March 22, 2013, the partial demolition of the buildings was completed and the materials had been removed from the site. However, the foundations and footings, which were not identified as hazardous, were left in place.

B. Procedural Background

Petitioner filed its initial petition and complaint for injunctive relief in April 2013 alleging, as its first cause of action, that District violated CEQA because it undertook a project, which it defined as all approvals and work involved in the demolition of the buildings, without conducting the requisite CEQA review for the project.[5] However, before District responded, Petitioner filed its FAC, which realleged the CEQA claim, discarded the nuisance claim, and added a claim under the Brown Act. The Brown Act claim asserted District (1) took action on an item not adequately appearing on the posted agenda in violation of sections 54954.2 and 54954.3, (2) approved the demolition without first conducting an open and public meeting in violation of various sections of the Brown Act, and (3) did not provide documents to the public for inspection as required by section 54957.5.

District demurred to the FAC. It argued the CEQA claim should be dismissed as moot because the demolition was complete and the physical changes to the environment

---

Cal.App.4th 383, 406, fn. 12), or are objectionable for other reasons, and we therefore decline to grant Petitioner's request for judicial notice except as to Exhibits F and G.

[5] Petitioner's initial petition and complaint also contained a second cause of action alleging the demolition created asbestos and lead dust and created a public nuisance.

were irreversible. It argued the Brown Act claims should also be dismissed because (1) the demolition was within the Superintendent's purview, which did not require a Board directive, and therefore the directive had no prejudicial impact; and (2) even had a Board directive been required, nullifying the Board's directive would be a purely advisory opinion and would have no effect because the demolition was complete.

Petitioner opposed the demurrer, arguing the CEQA claim was not moot because (1) the demolition was not completed because the building foundations were still in place, and (2) the demolition was merely part of a larger contemplated development project that would require CEQA review because District was considering placing a "Sports Field Project" on the property. Petitioner argued the Brown Act claim remained viable because it was prejudiced, asserting the Board's secret approval of the demolition prejudiced Petitioner by depriving it of its right to participate in the decisionmaking process.

District's reply asserted Petitioner's arguments were insufficient to demonstrate the causes of action stated in the FAC were not moot. District noted that Petitioner's *pleaded* CEQA claim defined the "project" as the demolition of the structures and, because judicially noticeable facts showed that project *was* complete, Petitioner had not overcome District's mootness argument. District then noted that Petitioner, apparently recognizing its pleaded CEQA claim was moot, was seeking to avoid the mootness argument by claiming the demolition was a discrete part of a larger project that began when District acquired the property in 2011 to build the sports field project. District argued that claim was not pleaded but, even *had* Petitioner asserted that claim, it would have been subject to demurrer for the independent reason that it would have been time-barred. As to the

6

Brown Act claims, District noted Petitioner had not even addressed a fatal flaw raised in District's demurrer--that nullification of the Board's directive based on inadequate notice of the proposed action would be a purely advisory opinion and would have no effect because the demolition was already complete--and that Petitioner's other Brown Act claims were factually defective.

The court sustained District's demurrer without leave to amend. As to the Brown Act claim, the court ruled there were insufficient facts alleged, or proffered during oral argument, to support judicial intervention under the Brown Act. As to the CEQA claim, the court concluded the project alleged in the complaint (the demolition of the buildings) had been completed. The court also noted, to the extent any other project is subsequently pursued on the property, District would likely be required to comply with CEQA, and this subsequent CEQA process would be the proper forum for discussing the impacts of (and possible mitigation for) the already completed demolition of the alleged historical buildings. Accordingly, the court sustained District's demurrer without leave to amend.

II

ANALYSIS OF CEQA CLAIM

A. General CEQA Principles

The Legislature enacted CEQA to "[e]nsure . . . the long-term protection of the environment . . . ." (Pub. Resources Code, § 21001, subd. (d).) "The foremost principle under CEQA is that the Legislature intended the act 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of

7

the statutory language.' " (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 390.)

CEQA and its implementing regulations "have established a three-tiered process to ensure that public agencies inform their decisions with environmental considerations." (*Davidon Homes* v. *City of San Jose* (1997) 54 Cal.App.4th 106, 112 (*Davidon Homes*).) The first tier requires the agency to determine whether or not CEQA applies to the proposed activity or whether the project is exempted by statute or the Guidelines.[6] (*Davidon Homes, supra,* 54 Cal.App.4th at p. 112.)

In cases in which CEQA applies to the project and there is no exemption, "the agency must proceed with the second tier and conduct an initial study. [Citation.] If the initial study reveals that the project will not have a significant environmental effect, the agency must prepare a negative declaration, briefly describing the reasons supporting that determination. [Citations.] Otherwise, the third step in the process is to prepare a full environmental impact report (EIR) on the proposed project." (*Davidon Homes, supra,* 54 Cal.App.4th at p. 113.) The term "project" is given a broad interpretation (*RiverWatch v. Olivenhain Municipal Water Dist.* (2009) 170 Cal.App.4th 1186, 1203), and whether an activity constitutes a "project" is a question of law in the first instance. (*Ibid*.)

It has been repeatedly observed the EIR is the "heart of CEQA." (Guidelines, § 15003, subd. (a); *Laurel Heights Improvement Assn. v. Regents of University of*

---

6     All references to Guidelines are to the state CEQA Guidelines, which implement CEQA, and are codified at California Code of Regulations, title 14, section 15000 et seq.

8

*California, supra,* 47 Cal.3d at p. 392; *Pala Band of Mission Indians* v. *County of San Diego* (1998) 68 Cal.App.4th 556, 570.) The purpose of the EIR "is to inform the public and its responsible officials of the environmental consequences of their decisions *before* they are made." (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564.) When a public project requires an EIR prior to approval, the public agency may not approve the project without first completing CEQA review or take actions that "give[] impetus to a planned or forseeable project in a manner that forecloses alternatives or mitigation measures that would ordinarily be part of CEQA review of that public project." (Guidelines, § 15004, subd. (b)(2).) However, approval "cannot be equated with the agency's mere interest in, or inclination to support, a project, no matter how well defined." (*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 136.)

    B. <u>Standard of Review</u>

    Because this matter arises from a judgment entered after the court sustained District's demurrer without leave to amend, "[w]e apply well-established rules of review. 'A demurrer tests the legal sufficiency of the complaint. [Citation.] Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of

9

proving the possibility of cure by amendment.' " (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173.)

C. Analysis

Petitioner's FAC asserted the project, which it defined as all approvals and work "related . . . to the approval of demolition and demolition of historic buildings," was required to have CEQA review, and District did not comply with CEQA before approving and/or commencing the project. Petitioner sought a writ of mandate compelling District to vacate and set aside approval of the project and to prepare and certify a legally adequate EIR for the project.

We conclude the trial court correctly sustained the demurrer to Petitioner's *pleaded* CEQA claim because CEQA does not allow for review of a completed project.[7] (See,

---

[7]      On appeal, Petitioner appears to assert it should have been granted leave to amend its CEQA claim because events subsequent to the trial court's ruling, of which Petitioner has requested we take judicial notice, showed Petitioner's FAC was capable of being amended to plead the existence of the sports field project. Petitioner notes that in September 2013 the Board issued a "Notice of Preparation and Notice of Public Scoping Meeting" informing the public that an environmental impact report (EIR) was being prepared for the proposed sports field project to be built on the property. Although we grant Petitioner's request for judicial notice as to these documents (*Long v. Hultberg* (1972) 27 Cal.App.3d 606, 608 [judicial notice of facts occurring after judgment is proper]), the existence of these facts does not undermine the trial court's ruling because, even had Petitioner amended its FAC to allege these facts, the action still would have been subject to general demurrer, albeit for a different reason: Petitioner could not have pleaded District failed to comply with CEQA because these documents show the administrative process, including the requirement that Petitioner exhaust its administrative remedies (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 909-910), was not yet complete. Even had Petitioner amended its FAC to allege these subsequent facts, the claim would not have been ripe at that stage of the proceedings. (*Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara* (2004) 121 Cal.App.4th 864, 875

10

e.g., *Hixon v. County of Los Angeles* (1974) 38 Cal.App.3d 370, 377-378 [upholding dismissal of CEQA action demanding an EIR for tree removal where mature trees had already been removed and replaced with young trees because "preparation of an EIR . . . would be futile. The project is ended, the trees are cut down and the subject is now moot insofar as resort to a planning or informational document, which is what an EIR is."]; accord, *Environmental Coalition of Orange County, Inc. v. Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 171-173 [challenge to EIR for annexation moot where annexation had already occurred and could not be ordered annulled because annexing city was not a party to the action].) Because the project alleged by Petitioner was fully complete, Petitioner's CEQA claim was moot because the court was unable to provide Petitioner with effectual relief and any order would have no practical impact. (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 ["A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief [citation] [and] [c]ourts have applied this rule to CEQA challenges . . . ."] (*Woodward Park*).)

Petitioner argues the court erred in concluding it could grant no effectual relief because, under cases such as *Bakersfield Citizens for Local Control v. City of Bakersfield*

[trial court properly rejected petition without ruling on the merits where no final determination approving or disapproving project because "[i]n the context of administrative proceedings, a controversy is not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties"].) Moreover, we also deny District's request for judicial notice (seeking judicial notice of District's June 2014 recirculated draft environment impact report) because our conclusions render moot any need to consider the draft EIR.

(2004) 124 Cal.App.4th 1184 and *Woodward Park, supra,* 77 Cal.App.4th 880, a court may require project modification, reconfiguration or restoration of the site to its original condition. However, in *Bakersfield Citizens,* the court examined a project only partially built, rather than one now fully complete.[8] Under circumstances analogous to the present case, courts have rejected the *Bakersfield Citizens* approach and instead adhere to cases such as *Hixon v. County of Los Angeles, supra,* 38 Cal.App.3d 370 and *Wilson & Wilson v. City Council of Redwood* City (2011) 191 Cal.App.4th 1559 to conclude the mootness doctrine applied. (See, e.g., *Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538, 1547-1551 (*Baykeeper*).) Petitioner's reliance on *Woodward Park* does not detract from our conclusion that the mootness doctrine applies. There, a timely challenge was filed that resulted in a judgment mandating preparation of an adequate EIR but, during the pendency of that action, the developer chose to finish constructing the project. (*Woodward Park, supra,* 77 Cal.App.4th at pp. 888-889.) As explained by *Baykeeper,* although *Woodward Park's* rejection of the mootness doctrine might have application when a party seeks " ' " 'to avoid CEQA by continuing with construction of a project in the face of litigation, delaying preparation of a court-ordered EIR pending appeal, and then arguing the case is moot because the project has been completed and is operating' " ' " (*Baykeeper,* at p. 1550, quoting *Woodward Park,* at p. 889), when "neither

---

8    Petitioner attempts to bring its action under the umbrella of *Bakersfield Citizens* by arguing on appeal that the project is not complete. However, judicially noticeable facts demonstrate that *the project pleaded by Petitioner's FAC* has been completed. To the extent Petitioner's argument rests on the assertion that an unpleaded project--the sports field project--is not completed, Petitioner's action would be premature. (See fn. 7, *ante.*)

12

the city nor the developer proceeded in violation of a court order" (*Baykeeper,* at p. 1550) to complete the project, the mootness doctrine as enunciated in cases such as *Hixon* and *Wilson & Wilson* controls. (*Baykeeper,* at p. 1550-1551.)

Petitioner also relies on the statement in *Kriebel v. City Council* (1980) 112 Cal.App.3d 693, in which this court rejected a motion to dismiss an appeal for mootness where work on a project had begun despite a timely appeal challenging the approval of the project (*id* at p. 707), to argue the trial court erred in concluding Petitioner's action was moot. *Kriebel* is distinguishable for a pivotal reason: the project was only partially built. In *Kriebel*, the owners of property next to a proposed subdivision development sought a writ of mandate to set aside approval of the project by the city council, which the trial court denied, and a timely appeal was filed but the developer began work on the project and then moved to dismiss the appeal upon the grounds of mootness. This court, although affirming the trial court's judgment, denied the motion to dismiss for mootness and rejected the claim that approval and recording of the final subdivision map or completion of grading and storm drains on the site mooted the appeal (*id.* at pp. 697, 701-707), reasoning that, although the developer was at liberty to proceed with processing the subdivision map and to commence work, such "land improvement work accomplished pending the appeal are . . . at the risk of the applicant." (*Id*. at p. 707.) Because the project in *Kriebel* was not complete, but had only proceeded as far as grading the hillside, the project in *Kriebel* could still have been either halted or subjected to substantial mitigation measures. (Accord, *Tyler v. Cuomo* (9th Cir. 2000) 236 F.3d 1124, 1137

13

[rejecting mootness challenge to project where "changes can still be made to help alleviate any adverse effects"].)

Here, the project challenged by Petitioner's FAC was complete, and no changes to the demolition could alleviate any adverse effects from the demolition, and therefore *Kriebel* is inapposite. We conclude the trial court correctly ruled that, as a matter of law, Petitioner's FAC did not state facts upon which any relief might effectively be granted, and therefore correctly sustained without leave to amend District's demurrer to Petitioner's CEQA claim.

II

ANALYSIS OF BROWN ACT CLAIM

Petitioner's Brown Act claim first asserted District took action on an item not adequately appearing on the posted agenda. Petitioner's Brown Act claim also alleged, on information and belief, that District's Board approved the demolition without first conducting an open and public meeting, and that Board considered documents without providing those documents to the public for inspection. The court ruled there were insufficient facts alleged, or proffered during oral argument, to support judicial intervention under the Brown Act.

A. General Principles

The Brown Act is designed to encourage public participation in government decisionmaking. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 681.) The Brown Act's provisions include several requirements that Petitioner claimed were violated by District in connection with Board's March 14, 2013, directive. Petitioner

14

alleged District violated the provisions that: (1) an agenda must be posted at least 72 hours before a regular meeting and forbids action on any item not included on that agenda (§§ 54954.2, subd. (a) & 54954.3); (2) a majority of the elected members of the governing body may not, outside of an authorized meeting, discuss, deliberate about, or take any action on any item of business within the subject matter jurisdiction of the legislative body either directly or through intermediaries (§ 54952.2); and (3) any writings distributed to all or a majority of the members of a legislative body in connection with a matter to be discussed or considered at an open meeting must be made available for public inspection upon request (§ 54957.5, subd. (a)).

B. <u>Analysis</u>

Petitioner argues the trial court erroneously sustained the demurrer, based on its determination there were insufficient facts alleged or proffered to support judicial intervention under the Brown Act, because the trial court misinterpreted the remedies available to Petitioner. Petitioner argues on appeal its FAC adequately pleaded a claim on which a court could (1) issue an injunction under section 54960, subdivision (a), to compel District to comply with sections 54952.2, 54953 and 54957.5 in the future, and (2) order Board to audio record its closed sessions under section 54960, subdivision (b).[9]

---

[9] Petitioner's FAC, which alleged the agenda notice was insufficient under sections 54954.2, subdivision (a), and 54954.3, also sought a judgment declaring such action violated the Brown Act and declaring any action taken by the Board to be null and void. The trial court concluded, because the buildings had already been demolished, this aspect of Petitioner's Brown Act claim was moot because a judgment nullifying the March 14 directive would result in nothing. On appeal, Petitioner provides no argument asserting this aspect of the trial court's ruling (e.g. Petitioner's claim seeking nullification of the

15

Petitioner asserts, because it pleaded (as a past violation of the Brown Act) that the agenda item was inadequately detailed in violation of sections 54954.2 and 54954.3 and that District violated other Brown Act provisions, it adequately pleaded a claim for injunctive and declaratory relief under section 54960 because the FAC further alleged District is "likely to continue to violate the Brown Act in the future."

Section 54960 provides that an interested person may commence an action "by mandamus, injunction, or declaratory relief for the purpose of *stopping or preventing violations or threatened violations* of this chapter by members of the legislative body . . . or to determine the applicability of this chapter to *ongoing actions or threatened future actions* of the legislative body, or to determine the applicability of this chapter to past actions of the legislative body, . . . or to compel the legislative body to audio record its closed sessions as hereinafter provided." (Italics added.) In *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509 (*Regents*), our Supreme Court evaluated an analogous statutory scheme and concluded such a scheme is designed to stop current violations or prevent future violations, and is not designed to remedy past actions. (*Id.* at pp. 522-526.)

Petitioner relies on numerous cases, including *California Alliance for Utility Safety and Education v. City of San Diego* (1997) 56 Cal.App.4th 1024 (*CAUSE*) and

---

March 14 directive was moot because no effective relief could be ordered for the harm resulting from that directive) was erroneous, and we therefore deemed it abandoned and do not further consider it. (See, e.g., *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 710-711 [failure to articulate any legal argument in support of a claim of error may, in the discretion of the appellate court, be deemed an abandonment of that aspect of the appeal].)

16

*Common Cause v. Stirling* (1983) 147 Cal.App.3d 518, to argue that any dispute over the agency's duties under the Brown Act is sufficient evidence of a threatened future violation of the Brown Act to support an action for declaratory and injunctive relief even where, as here, the declaratory and injunctive relief action would have no impact on prior actions of the agency. (*CAUSE*, at p. 1030; *Common Cause*, at p. 524.) However, in *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, this court recognized that *Regents* called into question the vitality of *Common Cause* and *CAUSE* but concluded the holdings in *Common Cause* and *CAUSE* remained viable after *Regents* "to the extent that the showing of past violations that was made related specifically to present or future ones." (*Shapiro,* at p. 916, fn. 6.) Thus, in *Shapiro*, this court concluded a claim under section 54960 was viable when there is a showing of a pattern of past conduct that provided an evidentiary basis to support the allegation that the legislative body would *continue* violating the Brown Act.[10] (*Shapiro, supra,* 96 Cal.App.4th at p. 915 ["so long

---

10    Similar considerations apply to other cases cited by Petitioner. For example, in *Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781, the court found certain "gatherings" of a quorum of the board to discuss district business were "meetings" within the ambit of the Brown Act, and observed that "the District's persistent denials that such a gathering was a 'meeting' subject to the Brown Act warrants declaratory relief in favor of appellants." (*Id*. at p. 798.) Similarly, in *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877 (*EDP*), the plaintiff challenged whether county's so-called "streamlined zoning process" comported with state law, and because county claimed it *did* comply with state law and that it intended to *continue* to " ' "be in compliance with state law," ' " an actual controversy was presented over future actions. (*Id*. at pp. 885-886.) Significantly, the *EDP* court contrasted its facts from those in *Burke v. City etc. of San Francisco* (1968) 258 Cal.App.2d 32, 34, because in *Burke* "no 'actual controversy' existed because there was no basis for the taxpayers/plaintiffs' assumption that the practices and policies of a former city tax assessor would be followed

17

as the allegations and proof of the legislative body's practices extend to '*past actions and violations that are related to present or future ones,*' the Brown Act provisions are brought into play to authorize and justify injunctive relief"].)  Indeed, the *Shapiro* court harmonized *CAUSE* with *Regents* and the statutory scheme by noting that, in *CAUSE*, the declaratory relief action under section 54960 was deemed ripe, as against a demurrer, because (1) there was an actual controversy between the parties over whether a past Brown Act violation had occurred, (2) city failed to concede the facts alleged by plaintiffs constitute a violation of the Brown Act, and (3) most importantly "the past action *was in fact an ongoing procedure* from which the court could reasonably infer, in light of the city attorney's refusal to change that procedure, that there would be continuing or future threatened Brown Act violations."  (*Shapiro,* at p. 916, fn. omitted.)

We distill from these authorities the requirement that, to state a viable claim for declaratory and injunctive relief under section 54960, the plaintiff must allege the legislative body is engaged in ongoing violations of, or the legislative body threatens to violate in the future, the provisions of the Brown Act, and to support such allegations with competent allegations of fact demonstrating either that the legislative body has a historical pattern of violating Brown Act provisions or that the legislative body has an ongoing practice or policy that transgresses Brown Act provisions.  Measured against this standard, we conclude the trial court correctly ruled Petitioner's FAC did not allege

by his successor and no reason to suppose that the city supervisors would abuse their powers.' "  (*EDP*, at p. 886.)

18

sufficient facts, nor did Petitioner proffer during oral argument any additional facts that would support judicial intervention pursuant to the provisions of section 54960.

The FAC did specifically allege the notice of agenda for the March 14, 2013, meeting was inadequately detailed as to the item addressing the property, in violation of sections 54954.2 and 54954.3 of the Brown Act. However, Petitioner did not allege any other facts demonstrating Board had a historical *pattern* of providing inadequate details in its notices of agenda, or any facts that the Board had an ongoing practice or policy of providing inadequate details in its notices of agenda.[11] Accordingly, to the extent Petitioner's claim for declaratory and injunctive relief under section 54960 rested on an alleged violation of sections 54954.2 and 54954.3 of the Brown Act, it was inadequate and the trial court correctly ruled it did not state a claim for declaratory or injunctive relief to prevent violations or threatened violations of the Brown Act.

Petitioner's FAC also alleged Board violated various sections of the Brown Act by issuing its directive (to move forward with the demolition) without first conducting an open and public meeting. This allegation necessarily rests on Petitioner's allegation, *made solely on information and belief*, that Board discussed and/or took action prior to and outside of the March 14 meeting to develop a collective concurrence in violation of

---

[11] Indeed, even *had* Petitioner made those allegations, the notice of agenda that *was* attached to the FAC contained detailed descriptions of other "action" items. When assessing the propriety of a ruling sustaining a demurrer, we disregard allegations of fact inconsistent with attached documents or contrary to facts judicially noticed. (*Hoffman, supra,* 179 Cal.App.4th at p. 400.)

19

sections 54952.2, 54953 and 54954.2.[12]  As this court recently explained in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, although a " ' "[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, *if he has information leading him to believe that the allegations are true* " ' [quoting *Doe v City of Los Angeles* (2007) 42 Cal.4th 531, 550, italics added by *Gomes*], . . . a pleading made on information and belief is insufficient if it 'merely assert[s] the facts so alleged without alleging such information that "lead[s] [the plaintiff] to believe that the allegations are true." ' " (*Id.* at pp. 1158-1159, quoting *Doe,* at p. 551, fn. 5.)

Although the FAC does allege district *staff* took steps to evaluate the structural integrity of the structures and to hire contractors in preparation for the demolition, it is devoid of any facts suggesting any *Board member* was involved in (or was even apprised of) the steps taken by staff, much less any facts that could lead a plaintiff to believe as true the allegation that a group of Board members secretly met in advance of the March 14 public meeting to develop agreement on the course of action to be taken.  Because only the latter type of conduct comprises a "meeting" within the ambit of the Brown Act (see *Frazer v. Dixon Unified School Dist., supra*, 18 Cal.App.4th at pp. 796-798 [no evidence of any type of "collective deliberation" by Board members regarding the memoranda received from staff; one-way transmission to and solitary review by Board

_____

12    Petitioner does not dispute the March 14 meeting was an "open and public meeting" of Board, and does not dispute that Board heard from several people (arguing for and against preservation of the buildings) before it adopted a motion directing District staff to move forward to clear the site.  Accordingly, Petitioner's claim necessarily rests on the allegation Board as a group discussed and/or took action prior to and outside of the March 14 meeting on whether to approve the proposed demolition.

members of background materials relating to issue not within the ambit of open meeting laws]), Petitioner's FAC contains no competent allegations to support its claim that *any* violation of the open meetings laws occurred.

More importantly, Petitioner did not allege any facts demonstrating Board had a historical *pattern* of engaging in secret meetings, or any facts that Board had an ongoing practice or policy of conducting secret meetings in advance of open meetings to reach collective concurrences on the action to be taken. To the extent Petitioner's claim for declaratory and injunctive relief under section 54960 rested on alleged violation of sections 54952.2, 54953 and 54954.2 of the Brown Act, it was inadequate and the trial court correctly ruled it did not state a claim for declaratory or injunctive relief to prevent violations or threatened violations of the Brown Act.

Petitioner's final claim for relief under section 54960 is based on its claim, again made on information and belief, that certain written materials (specifically, the structural evaluation, the hazardous materials evaluation, and the contracts relating to the demolition) were provided to Board members at the March 14 meeting but were not made available to the public at the meeting, in violation of section 54957.5. There are several reasons why this allegation does not adequately state a claim for relief under section 54960. First, the allegation that documents were in fact distributed to Board members at the March 14, 2013, meeting appears to be contradicted by the minutes of that meeting

21

annexed to the FAC,[13] which justifies disregard of Petitioner's contrary allegation. (*Hoffman, supra,* 179 Cal.App.4th at p. 400.) Second, the FAC was verified by Mr. Vick, who was actually present (and indeed spoke) at the March 14 meeting, and presumably witnessed what did and did not occur at that meeting. Because a plaintiff may not allege facts on information and belief when he has reason to know them directly (see, e.g., *Thompson v. Sutton* (1942) 50 Cal.App.2d 272, 279 [holding that whether plaintiff owns an easement is a fact "peculiarly within the knowledge of the party," and thus cannot be alleged on information and belief]; *Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 ["facts that are ascertainable from public records may not properly be pleaded on information and belief"]), it was improper for the FAC to allege on information and belief that documents were provided to Board members at the March 14 meeting when Petitioner had reason to know directly whether or not such documents were provided to Board members at that meeting.

Finally, and most significantly, Petitioner did not allege any facts demonstrating Board had a historical *pattern* of declining to make available to the public written materials provided to Board members, or any facts that Board had an ongoing practice or policy of declining to make available to the public written materials provided to Board members. To the extent Petitioner's claim for declaratory and injunctive relief under

---

13     The FAC attached the minutes of the March 14 meeting. Although the minutes identify (and attach as exhibits to the minutes) numerous documents on other agenda items presented for approval at the March 14 meeting, the minute entry for the discussion about directing staff to move forward with site clearance contains no similar identification of documents.

section 54960 rested on an alleged violation of section 54957.5, it was inadequate and the trial court correctly ruled it did not state a claim for declaratory or injunctive relief to prevent violations or threatened violations of the Brown Act.

DISPOSITION

The judgment is affirmed. District is entitled to costs on appeal.


McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.